No. 85-438

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

STATE OF MONTANA,

Plaintiff and Respondent,

-vs-

ALVIN LA TRAY,

Defendant and Appellant.

APPEAL FROM: District Court of the Sixteenth Judicial District,
In and for the County of Rosebud,
The Honorable Alfred B. Coate, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Garry P. Bunke argued, Forsyth, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
Robert F.W. Smith argued, Asst. Atty. General,
Helena, Montana
John S. Forsythe argued, County Attorney, Forsyth,
Montana

Submitted: February 13, 1986

Decided: March 13, 1986

Filed: MAR 13 1986

Ethel M. Harrison
Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

Defendant, Alvin La Tray, was originally charged with attempted deliberate homicide on November 23, 1983. Approximately one month later, defendant entered into a plea bargain agreement and pled guilty to aggravated assault in the Sixteenth Judicial District Court, County of Rosebud. He was sentenced January 16, 1984, to twenty years in the Montana State Prison, with two years added for use of a dangerous weapon. Over the next year, defendant filed several motions seeking to withdraw his guilty plea. The trial judge treated them as motions to withdraw and as a petition for post-conviction relief. A hearing was held on those motions May 25, 1985. They were denied from the bench. Defendant appeals. We affirm the decision of the trial judge.

The issues raised are:

1. Whether defendant was denied his constitutional right of effective assistance of counsel?

2. Whether the District Court should have granted defendant's petition for post-conviction relief and permitted the withdrawal of his guilty plea?

The circumstances surrounding the crime are in dispute. At his plea bargain hearing, defendant admitted shooting his roommate, H. D. Luloff on October 10, 1983. Defendant stated that Tami Huebner had offered to lure Luloff to the river with promises of sex if defendant would follow them and shoot Luloff. Defendant apparently was angry with Luloff, so agreed. Tami allegedly smoked a cigarette, allowing defendant to find them in the dark. Next, according to

defendant, Tami and Luloff approached defendant and Luloff introduced defendant to Tami, following which defendant shot Luloff. Tami and defendant then left the scene.

Tami has given at least three conflicting statements to authorities. Initially, she claimed to know nothing about the shooting. Later, at a deposition, she admitted to at least being at the scene. (The deposition is not included in the record.) Still later, she gave a statement to Police Officer Odem alleging that Luloff had tried to rape her down by the river, La Tray had appeared and prevented the rape. She claimed she did not know Luloff was shot till later that evening.

Luloff alleges in his statement that Tami approached him about going to the river and "fooling around." Luloff agreed. At the river, Tami left Luloff and wandered around. Luloff went down to the water. On returning to the vehicle, Luloff saw someone in a green O'Toole's jacket and then was shot. He saw Tami walking off with the individual in the green jacket as he was passing out. Defendant apparently owns a green O'Toole's jacket, but when confronted by Luloff stated it had been stolen.

An information was filed and served on defendant November 23, 1983, charging him with attempted deliberate homicide. The information was served while he was incarcerated in the Rosebud County Jail on an unrelated charge. At his initial appearance, defendant requested that counsel be appointed. John Houtz was appointed November 29, 1983. Prior to this point, several police officers, and especially Officer Odem, discussed the case with defendant in his cell. Defendant allegedly signed a fourteen page confession as a result of those "talks." The confession is

not in the record. A plea bargain was also discussed, after which Officer Odem told defendant he would contact the County Attorney.

Attorney Houtz' activities as counsel for defendant were limited:

1) December 4 - 30 minute conference with defendant

2) December 10 - 15 minute talk with defendant and County Attorney

3) December 12 - 10 minute call from defendant

4) December 12 - 2 - 15 minute conferences with Tom Lofland, defendant's probation officer

5) December 13 - Conference with defendant regarding State's offer to plea bargain

6) December 16 - Sent letter requesting discovery

7) December 22 - Wrote letter to defendant recommending plea bargain; dictated plea bargain agreement

8) December 27 - Sent copy of agreement to County Attorney; picked up witness statements

9) December 29 - Entered change of plea - guilty of aggravated assault

At the hearing on defendant's petition for post-conviction relief, Houtz testified that he had not attempted to suppress defendant's confession, despite defendant's request he do so, because he saw no grounds for suppression. He later stated that in representing over one hundred defendants, he had only filed a motion to suppress once or twice and never successfully.

Houtz indicated that he believed someone had "gotten" to defendant before he was appointed and had arranged the plea bargain. Houtz further stated that because of defendant's confession, he felt the plea bargain would be best for defendant.

When questioned about his efforts to adequately represent defendant, Houtz admitted that when he recommended

- 4 -

to defendant that he plea bargain, he had only interviewed the defendant, his probation officer and the victim. Sixteen potential witnesses were provided to Houtz by the State. Houtz was unaware that Luloff had stated in his statement to police that he could not identify his assailant. Luloff had apparently told Houtz the assailant was La Tray. Nor did Houtz know that Tami Huebner had told three very inconsistent stories, one which could possibly have provided an excuse for the shooting. Even though Houtz learned of this information prior to defendant's plea, he never informed defendant.

Defendant appeared before Judge Coate with his attorney on December 29, 1983, and plead guilty to aggravated assault. The Judge conducted an intensive interrogation of defendant prior to the plea to ensure that it was made knowingly and without coercion. In his petition for post-conviction relief and at his subsequent hearing, defendant contended that he gave all the "right" answers because he knew that was the only way the judge would accept his plea. Defendant had been warned by either Officer Odem or the County Attorney that he would get 210 years on the attempted deliberate homicide charge. Defendant wanted to avoid that possibility at all costs.

In Strickland v. Washington (1984), 466 U.S. 688, 104 S.Ct. 2052, 80 L.Ed.2d 674, the United States Supreme Court adopted a two-prong test for evaluating claims of ineffective assistance of counsel.

> 1. "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 687-688, 104 S.Ct. at 2065, 80 L.Ed.2d at 693.

> 2. "The defendant must show that there is a reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

We adopted this test in State v. Boyer (Mont. 1985), 695 P.2d 829, 831, 42 St.Rep. 247, 250.

There is no question but that counsel's efforts in representing defendant could have been more diligent. However, the dispositive question is whether defendant was prejudiced by his counsel's lack of diligence. We find that he was not.

For all intents and purposes, it appears defendant had his plea bargain practically guaranteed before Houtz was appointed as his attorney. Houtz, after reviewing the case against his client, determined the plea bargain to be reasonable and fair. He therefore pursued and achieved finalization of that bargain.

Under the circumstances, we also find the plea bargain to be reasonable and fair. We are not persuaded that had defendant been advised of Huebner's and Luloff's inconsistent statements, he would have opted to proceed to trial on the attempted deliberate homicide charge. Thus, counsel's failure to advise his client of the complete case against him does not undermine our confidence in the eventual outcome, the plea bargain. Strickland, 466 U.S. at 694, 104 S.Ct. at 2068, 80 L.Ed.2d at 698.

We hold that defendant received the effective assistance of counsel.

The rule for allowing withdrawal of a guilty plea was recently set forth in State v. Laverdure (Mont. 1984), 685 P.2d 375, 377, 41 St.Rep. 1570, 1572.

> Review of a motion to withdraw a guilty plea requires the consideration and balancing of at least three relevant factors: "(1) the adequacy

of the interrogation by the District Court of the defendant at the entry of the guilty plea as to the defendant's understanding of the consequences of his plea, (2) the promptness with which the defendant attempts to withdraw the prior plea, and (3) the fact that the defendant's plea was apparently the result of plea bargain in which the guilty plea was given in exchange for dismissal of another charge . . . ." State v. Huttinger (1979), 182 Mont. 50, 54, 595 P.2d 363, 366.

The trial judge's interrogation of defendant at the time he entered his guilty plea was adequate. Defendant does not dispute this conclusion. Furthermore, defendant's efforts to withdraw his plea were not timely. He requested a transcript a year after pleading guilty. His first motion was filed in January of 1985. Finally, defendant's plea was clearly the result of a plea bargain.

Defendant's reasons for wanting to withdraw his guilty plea center around his ineffective assistance of counsel claim. For example, defendant contends that his lawyer's failure to accurately and fully advise him of the case against him resulted in his decision to plead guilty. However, our holding that defendant received effective assistance of counsel significantly undermines this contention.

Therefore, we affirm the trial judge's refusal to permit defendant to withdraw his guilty plea.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

- 7 -

John Conway Harrison

_____

Frank B. Morris

R. C. Gulbrandson

John W. Sheehy
Justices