No. 91-029

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

          Plaintiff and Respondent,

-vs-

JAMES LEE CAMERON,

          Defendant and Appellant.

FILED

FEB 2 0 1992

CLERK OF SUPREME COURT
STATE OF MONTANA
Smith

APPEAL FROM:    District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Michael Donahoe, Helena, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General; Joseph E.
Thaggard, Helena, Montana
Mike McGrath, County Attorney, Helena, Montana

Submitted on Briefs:  November 21, 1991

Decided:  February 20, 1992

Filed:

Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

Defendant, James Lee Cameron, was charged with two counts of felony sexual assault pursuant to § 45-5-502, MCA. On September 4, 1990, in the District Court for the First Judicial District, Lewis and Clark County, defendant pled guilty to both counts pursuant to an Alford plea. Subsequently, defendant moved to withdraw his guilty plea. The District Court denied his motion and sentenced defendant to concurrent terms of twenty years imprisonment, with five years suspended on each count. Defendant appeals. We affirm.

The issues for our review are:

1.    Did the District Court abuse its discretion when it refused to allow the defendant to withdraw his pleas of guilty?

2.    Did the defendant receive ineffective assistance of counsel with respect to his attorney's advice that he should enter Alford pleas to the charged offenses rather than proceeding to trial?

3.    Did the District Court deny the defendant due process of law in violation of the Montana and United States Constitutions?

4.    Did a sufficient factual basis exist for the District Court to accept the defendant's pleas of guilty?

5.    Did the District Court commit reversible error by failing to arraign the defendant on the charges set forth in the amended information?

On April 18, 1990, the State charged the defendant by information with two counts of felony sexual assault, pursuant to § 45-5-502, MCA. Count I arose from allegations that defendant had

2

sexually molested his daughter, M.S., between 1985 and 1989. Count II arose from allegations that defendant sexually molested E.P., the daughter of a woman with whom defendant had an affair, between 1985 and 1989. Both victims were nine or ten years old at the time the State filed the information.

Originally, defendant pled not guilty to both charges. Then, two weeks before the trial date, his attorney, Cort Harrington, moved the District Court for leave to withdraw as defendant's attorney. The motion was granted and the trial was postponed.

On May 29, 1990, the District Court appointed Mayo Ashley as defense counsel. As the September trial date closed in, defendant became dissatisfied with Ashley's representation. About one week before trial defendant asked Cort Harrington to resume his defense. Harrington refused.

Two days before trial, because he was feeling stressed, defendant met with Lynn Pillman, a licensed professional counselor. During the meeting defendant expressed to Ms. Pillman his disappointment with Ashley's representation and told Ms. Pillman that he did not wish to force the victims to testify in court. Ms. Pillman explained to defendant that, although she was not an attorney, she had previously counseled a client who pled guilty and later, after serving some time without illegal involvement, changed the plea to not guilty. She suggested defendant talk to his attorney about entering such a plea.

The morning of trial defendant asked Ashley about an Alford plea. Later that morning, defendant decided to enter Alford pleas to both counts of the information.

3

Prior to entry of the pleas the District Court and defendant had the following exchange.

THE COURT: You are entitled to have the amended information read to you in its entirety. Do you wish to have it read?

MR. CAMERON: No, Your Honor.

THE COURT: I think we've gone over this once before, but, the maximum possible punishment for sexual assault is imprisonment in the state prison for a term not to exceed 20 years and a fine of not more than $50,000. Now, that's on each count. Now, these are separate offenses, and under Montana law, it is possible to make sentences run consecutively, that is, one after the other. So, the maximum amount of prison time that could be imposed would be 40 years in the state prison and a fine -- fines up to $100,000; do you understand that?

MR. CAMERON: Yes, Your Honor.

THE COURT: Do you understand that you are entitled to trial by jury in this matter?

MR. CAMERON: Yes, Your Honor.

. . .

THE COURT: Now, we had a discussion about the psychologist in chambers, but other than that, if you have witnesses that had relevant information, do you understand that you could have called them to testify, that is, anybody that might have been a witness to the situation. I'm not talking about somebody who did an independent evaluation or anything like that, we're talking about a witness to what went on; do you understand that?

MR. CAMERON: Yes.

THE COURT: Now, if you went to trial and you were found guilty, you could appeal your conviction to the Montana Supreme Court. You would be represented by an attorney during that appeal, do you understand that?

MR. CAMERON: Yes.

THE COURT: Now, you have -- you cannot be compelled to incriminate yourself. That means that you have a right to remain silent and that can't be used against you. Mr. McGrath couldn't argue to the jury that Cameron

4

must be guilty just because he's sitting there not saying anything. He's not saying anything different than our witnesses. Do you understand he can't make that kind of an argument to the jury?

MR. CAMERON: Yes.

THE COURT: How is your head today, is it clear?

MR. CAMERON: Pretty mixed up.

THE COURT: But, you know what's going on?

MR. CAMERON: Yes, Your Honor.

THE COURT: Now, you've had -- we were supposed to start trial about an hour and a half ago. You have had an opportunity to consult with -- I don't know who it was, but you made some phone calls and consulted with a person other than Mr. Ashley; is that correct?

MR. CAMERON: Yes, Your Honor.

THE COURT: And you know what's going on?

MR. CAMERON: Yes.

. . .

THE COURT: I understand from Mr. Ashley, that you wish to enter what's called an Alford plea. I think he's probably explained to you that's the name of the case of North Carolina versus Alford or Alford versus North Carolina, I can't remember. But, anyway, it's a United States Supreme Court case which essentially says you enter a plea without having to tell me specifically what happened. And do you generally understand what an Alford plea is?

MR. CAMERON: Yes, Your Honor.

THE COURT: That's been explained to you. Do you have any questions about it?

MR. CAMERON: No, Your Honor.

THE COURT: Now, if you enter a plea, even though it may be an Alford plea, do you understand that you can't later come in here and withdraw that plea and ask that that plea be withdrawn? Do you understand?

MR. CAMERON: Yes, Your Honor. (Emphasis supplied.)

Following this colloquy, defendant entered a plea of guilty to

each count pursuant to the <u>Alford</u> case. Before accepting the plea, the District Court again asked defendant if he understood the implications of an Alford plea. After the defendant said he did the District Court asked for an offer of proof and then accepted the plea. It also ordered that defendant undergo both a sex offender evaluation and a presentence investigation and set sentencing for November 1, 1990.

Prior to sentencing, defendant moved the District court for leave to withdraw his guilty pleas for the following reasons.

(1) "Good cause" exists within the meaning of §46-16-105, MCA to allow the Defendant to withdraw his guilty plea because it will prevent the possibility of convicting an innocent man;

(2) The Defendant erroneously thought that despite his guilty plea he would have an opportunity to prove his innocence either before or after sentencing and the Defendant reached this conclusion based on advise he was given by his Court appointed counsel;

(3) The Court erred in not granting a continuance to allow the Defendant to obtain new counsel since no hearing was held to determine whether the Defendant's concerns about his Court appointed counsel were true;

(4) The Court erred in denying the Defendant's motion for an examination of the alleged victims by a defense psychologist and the denial of this motion deprived the Defendant of his rights to due process and equal protection under the Montana and United States constitutions.

After a hearing, the District Court denied defendant's motion for lack of good cause shown. Defendant appeals.

I

Did the District Court abuse its discretion when it refused to allow the defendant to withdraw his pleas of guilty?

Defendant argues that in entering an Alford plea he still maintained his innocence. He further contends that he was confused

6

about the Alford plea and that his case is defensible.

The State maintains that defendant voluntarily pled guilty and understood the consequences of a guilty plea. The State also contends that defendant's pleas of guilty were given intelligently and thus, the pleas were valid. We agree.

Section 46-16-105(2), MCA, provides:

> At any time before or after judgment the court may, **for good cause shown**, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. (Emphasis added).

Defendant has failed to show good cause for the withdrawal of his guilty pleas.

The determination of good cause is a matter of discretion for the district court and absent an abuse of that discretion, this Court will uphold the district court's refusal to permit the withdrawal of a guilty plea. State v. Miller (Mont. 1991), 810, P.2d 308, 310, 48 St.Rep. 389, 390. In Miller we stated:

> We recently reviewed the subject of a defendant's request to withdraw a guilty plea in Benjamin v. McCormick (1990), 243 Mont. 252, 792 P.2d 7. "When a guilty plea is based upon a fundamental mistake or misunderstanding as to its consequences, the sentencing court, at its discretion, may allow the defendant to withdraw the plea." Benjamin, 792 P.2d at 10. We further noted:

> "A change of plea will be permitted only if it fairly appears the defendant was ignorant of his rights and the consequences of his act, or he was unduly and improperly influenced either by hope or by fear in making the plea, or if it appears the plea was entered under some mistake or misapprehension. Each case must be examined on its own record. . . ."

Miller, 810 P.2d at 310.

There is nothing in the record to establish that the defendant's plea was based upon a fundamental mistake or

7

misunderstanding as to its consequences. In a similar manner, there is nothing in the record to indicate that the defendant was ignorant of his rights and the consequences of his act, or that he was unduly or improperly influenced by hope or by fear, or that his plea was entered under some mistake or misapprehension. As required in Miller, we have reviewed the record in this case and conclude that the District Court did not abuse its discretion in denying defendant's motion to withdraw his guilty plea. We affirm that action of the District Court.

A key conclusion on the part of the dissent is that defendant's attorney failed to explain that there was no possibility of a favorable sex offender evaluation if the defendant continued to maintain his innocence. It is that conclusion which leads the dissent to suggest that defendant should be allowed to withdraw his plea of guilty. The record in this case does not show that if the defendant maintained his innocence, there was no possibility of a favorable sex offender evaluation. That conclusion is reached by going outside the record. We therefore restate our previous conclusion that the record does not establish that the defendant's plea was based upon a fundamental mistake or misunderstanding as to its consequences.

II

Did the defendant receive ineffective assistance of counsel with respect to his attorney's advice that he should enter Alford pleas to the charged offenses rather than proceeding to trial?

Defendant maintains that Mr. Ashley did not provide him with effective assistance of counsel with respect to his Alford plea.

8

He contends that there was nothing for him to gain by entering an Alford plea since he maintained his innocence. The State urges that defendant's claim is without merit and that he has failed to establish that Mr. Ashley's assistance was ineffective.

The United States Supreme Court in Strickland v. Washington (1984), 466 U.S. 668, 687, set forth the test for determining when counsel is ineffective. The defendant must establish that: (1) the counsel's performance was deficient; and (2) the deficient performance so prejudiced the defendant as to deprive him of a fair trial. With regard to the Strickland test, this Court has stated:

> Under the two-pronged test set forth in Strickland, the defendant must first demonstrate that counsel's performance was deficient. To demonstrate that a counsel's performance was deficient, defendant must prove that counsel's performance fell below the range of competence reasonably demanded of attorneys in light of the Sixth Amendment. Second, the defendant must demonstrate that the counsel's deficiency was so prejudicial that the defendant was denied a fair trial. To satisfy this requirement, the defendant must demonstrate that but for counsel's deficient performance, it is reasonably probable that the result of the challenged proceeding would have been different. When a guilty plea is at issue rather than the result of a trial, the defendant must demonstrate that but for counsel's deficient performance, the defendant would not have pled guilty, and would have insisted on going to trial. (Citations omitted.)

State v. Senn (1990), 244 Mont. 56, 59, 795 P.2d 973, 975; State v. Aills (Mont. 1991), ___ P.2d ___, 48 St.Rep. 960.

Defendant has failed to meet the Strickland test. First, he has failed to demonstrate that Mr. Ashley's performance fell below the range of competence reasonably demanded of attorneys in light of the Sixth Amendment. Mr. Ashley was prepared to go to trial. He testified he worked on the case from the time he got it until the day of trial, at a "minimum of two to three hours a week". The

9

morning of the trial, defendant asked him about an Alford plea. Mr. Ashley explained an Alford plea to defendant and defendant understood it, as is clear from the interrogation of defendant by the trial judge before the pleas were accepted. Defendant attempts to argue that because he contends he is innocent, he should not have to pay the consequences of a plea of guilty. That argument is effectively rebutted by the previously quoted examination by the court where the maximum penalties were discussed, and where the defendant acknowledged that it was possible he could receive sentences totaling forty years in prison and $100,000 in fines.

We conclude that defendant has failed to show in any respect that his counsel's performance was deficient. As a result we need not address the second prong of the test with regard to prejudice. We hold that the defendant did not receive ineffective assistance of counsel with respect to his attorney's advice that he should enter Alford pleas rather than proceeding to trial.

### III

Did the District Court deny the defendant due process of law in violation of the Montana and United States Constitutions?

Defendant contends that the District Court denied him due process because the court should have informed him that to admit to the offenses would probably require him to attend an inpatient's sex offender treatment program at the State Prison, and continued assertion of innocence would prevent him from completing that program. The record does not contain any information on these contentions on the part of the defendant.

After a presentence hearing and prior to the sentencing of the

10

defendant, the District Court stated:

> THE COURT: Is there any legal reason why sentence should not now be pronounced?
>
> MR. DONAHOE: No, Your Honor.
>
> MR. MCGRATH: No, Your Honor.
>
> THE COURT: Mr. Cameron, you have been convicted by your pleas of guilty of two offenses of sexual assault. For sexual assault in count one, it is the judgment of this Court that you be sentenced to Montana State Prison for a term of 20 years.
> In count two, for the offense of sexual assault, it is the judgment of this Court that you be sentenced to the Montana State Prison for a term of 20 years. Those terms will run concurrently, and that I'm also going to suspend five of those years on certain conditions.
>
> . . .
>
> I've also considered the information contained in the presentence report. Mr. McGrath was correct, this has been an emotional case right from the start. Everybody has been caught up in that emotion. As Mr. McGrath wanted a much longer sentence, under the circumstances I think this is appropriate. I believe that certain conditions are needed in this case. Those conditions that I just laid down. If I did not suspend any of your sentence, you wouldn't have any conditions. I could fine you, like Judge Davis did yesterday, but my understanding of the law is that unless a portion of the sentence is suspended, that I don't retain any jurisdiction to lay down conditions. That's up to the parole board.

The record contains no evidence to establish that the District Court misled the defendant in any way with regard to his claim of violation of due process of law.

We hold that the District Court did not deny defendant due process of law in violation of the Montana and United States Constitutions.

IV

Did a sufficient factual basis exist for the District Court to accept the defendant's pleas of guilty?

Defendant maintains that there was an insufficient factual

11

basis for the District Court to accept his guilty pleas.

Again, the defendant's argument lacks merit.  In interpreting North Carolina v. Alford this Court has held that "there is no constitutional prohibition against accepting the guilty plea of a defendant who denied his actual guilt".  In the Matter of Brown (1980), 185 Mont. 200, 204, 605 P.2d 185, 187.

With regard to the factual basis for the plea, the following is a portion of the statement made by the prosecuting attorney in the District Court prior to sentencing:

> If we went to trial, the State is prepared to present both the young victims as witnesses.  [M.S.] would testify that she is the daughter of Jim Cameron, that over a period of years, over a period of the past five years, that he subjected her to various types of sexual assault, including beginning with game -- playing tickle game, such as that advanced to more sophisticated games where she was required to touch his penis and genital area and he would touch her vaginal area and touch her on the breasts.  She would also testify that over a period of years, that that kind of sexual activity occurred on a regular basis when she had visitation with him.  That included him touching her with his penis and that she would also testify that she observed Mr. Cameron attempting to have intercourse with [E.P.] while the three of them were sleeping in the same bed in Mr. Cameron's residence in Lewis and Clark County.
> [E.P.] would testify to similar events.  She is the daughter of a woman that Mr. Cameron had an affair with. . . . She would testify that over a period of years, that she was involved in various forms of sexual assault with Mr. Cameron, including, . . . tickle games, pornographic films, touching.  He'd have her touch his penis, his genitals and vice versa, that he attempted to insert his fingers inside her vagina and occasionally insert his penis inside her vagina.
> In addition to the testimony from the girls, we would have testimony from Dr. Elizabeth Gunderson who examined -- performed physical examinations on both of these girls, would testify that, in fact, [E.P.] was so frightened that she refused to have Dr. Gunderson physically examine her, and that she had to undergo -- be placed under anesthesia out at St. Peter's hospital before Dr. Gunderson could examine her.
> That in Dr. Gunderson's many years of experience, she had never had a victim that refused an examination

12

and had to be placed under anesthesia. That in the course of the physical examination of [E.P.], Dr. Gunderson concluded that, in fact, there was a considerable manipulation and healing, and that it is her opinion that [E.P.] has been sexually molested.

She would also testify that she examined [M.S.], that she took a history from [M.S.], and she also took a history from [E.P.]. Both girls indicated that they had been touched and penetrated by Mr. Cameron.

We would also have testimony from Debbie Huigen who is a certified licensed counselor who's been seeing [E.P.] and [her] mother, and Ms. Huigen would testify to a number of things regarding the dynamics of victims of sexual assault and would conclude her testimony by saying that in her opinion, [E.P.] is, indeed, the victim of sexual assault and has been sexually abused.

Tom Walstad, also a certified licensed counselor, would testify that he has, over the period of months, been counselling with [M.S.], that she has exhibited considerable symptoms of a victim of sexual assault, including a seizure disorder that Dr. Gunderson was prepared to testify about as well; that the seizures, in fact, stopped after the disclosure in this case and [M.S.] was assured that she would no longer have to visit with Mr. Cameron; and that in Mr. Walstad's opinion, [M.S.] is, indeed, a victim of sexual abuse.

We hold that the State's offer of proof established an adequate factual basis for the District Court to accept defendant's pleas.

V

Did the District Court commit reversible error by failing to arraign the defendant on the charges set forth in the amended information?

Defendant urges that the District Court violated § 46-11-403(1)(d), MCA, when it did not arraign him on the amended information. The State maintains that the District Court substantially complied with the arraignment procedures set forth in §§ 46-12-201 and 46-12-202, MCA. The State also urges that defendant waived any such error when he pled guilty to the charged offenses without objecting to said irregularities in the arraignment.

13

The only difference between the original and the amended information was the addition of the requisite mental states in the amended information. The charges were the same. Section 46-11-205(3), MCA, provides:

> The court may permit an information to be amended as to form at any time before a verdict or finding is issued if no additional or different offense is charged and <u>if the substantial rights of the defendant are not prejudiced</u>. (Emphasis added.)

Here, the substantial rights of the defendant were not prejudiced when the District Court accepted the amended information but did not arraign him on it. In addition, as previously quoted, the court pointed out to the defendant that he was entitled to have the amended information read in its entirety and asked if he wished to have it read, to which the defendant responded "no." When an amended information makes substantive changes in the charges, he should be arraigned. Here the amendment was not substantial and the charges remained the same.

We hold that the District Court did not commit reversible error by failing to arraign the defendant on the charges set forth in the amended information.

Affirmed.

We Concur:

_A. A. Turnage_

_John Conway Harrison_

_R. C. McDonough_

_____
Justices

_____
Justice

14

Justice Terry N. Trieweiler dissenting.

I dissent from the opinion of the majority. I would reverse the District Court's denial of defendant's motion to withdraw his guilty plea because I conclude that in denying that motion the District Court abused its discretion.

The defendant's guilty plea is referred to in the vernacular of criminal lawyers as an *Alford* plea. It was entered pursuant to the United States Supreme Court's decision in *North Carolina v. Alford* (1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d. 162. In that case the Supreme Court held that:

> An individual accused of a crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.

*Alford*, 400 U.S. at 37, 91 S.Ct. at 167, 27 L.Ed.2d at 171.

The problem is that the profession of innocence which can be maintained concurrently with an *Alford* plea of guilt has adverse consequences for any person convicted of a sexual offense. In this case, the District Court's failure to explain those adverse consequences was compounded by representations from the defendant's attorney which actually misled him concerning the consequences of his plea.

This Court knows about and cannot ignore the realty of sex offender therapy. The fact is, under the current state of the art, no person in Montana can receive sex offender therapy unless he or

15

she is willing to admit that they committed the sexual offense with which they are charged. We know that that is true whether the treatment occurs inside the Montana State Prison or outside its confines.

In *State v. Donnelly* (1990), 244 Mont. 371, 798 P.2d 89, the defendant was convicted of incest and sentenced to imprisonment at the Montana State Prison. The District Court also ordered that he would be ineligible for parole until successful completion of the sexual offender program at the prison. On appeal, the following facts were undisputed:

> [I]n order to be accepted into the sexual offender program and receive treatment, defendant must admit to incest of which he was convicted. Defendant contends that if he does not admit to incest, he will be denied treatment, and thus denied parole.

*Donnelly*, 798 P.2d at 95.

In that case, we held that conditioning parole on defendant's completion of the sexual offender program under those circumstances did not violate his privilege against self-incrimination.

In *State v. Imlay* (Mont. 1991), 813 P.2d 979, 48 St.Rep. 588, the defendant's prison sentence was suspended on the condition that he complete a sex offender treatment program outside the prison. However, that suspended sentence was revoked when the defendant was repeatedly rejected from sex offender treatment programs in Montana due to the fact that he denied committing the acts for which he was convicted. Testimony from Michael Sullivan, the social worker who

16

had attempted to treat the defendant in that case, was summarized as follows in our decision:

> Sullivan testified that the defendant's denial made it impossible for him to treat him in their program. He also testified that there was no other outpatient sexual therapy program in the State of Montana which would treat a sexual offender who denied that he was guilty of sexual misconduct.

*Imlay*, 813 P.2d at 982.

The point of mentioning what we know about treatment of sexual offenders is simply this: The sentence imposed on someone who pleads guilty to sexual assault is largely dependent on the presentence investigation. Section 46-18-111, MCA (1989). The presentence investigation must include an evaluation and recommendation regarding the defendant's suitability for treatment. Any person who denies guilt is not a candidate for treatment and is therefore unlikely to have his sentence suspended and is unlikely to be paroled once he arrives at the prison. None of these facts were explained to the defendant prior to the entry of his *Alford* plea.

Because the above circumstances were not explained to the defendant and because he was actually misled regarding the consequences of his plea, a change of plea should have been permitted.

In *Benjamin v. McCormick* (1990), 243 Mont. 252, 792 P.2d 7, the defendant was led to believe that by entering a plea of guilty to deviate sexual conduct in violation of § 45-5-505, MCA, he would

17

serve no longer than one year in prison. However, a condition of his prison sentence was that he also enroll in and successfully complete the sexual offender program. The problem that he learned of upon entering the prison was that the sexual offender program could not be completed in one year and that he would therefore have to serve a minimum of two years in prison. In that case, the District Court ordered the defendant's release on probation and we affirmed. However, in doing so we reasoned that the same result would occur under the rules pertaining to the withdrawal of guilty pleas. In language that is relevant to this case, we stated:

> The primary issue in this case is whether Benjamin voluntarily and knowingly entered his plea of guilty. Before accepting a guilty plea, the sentencing court must determine that the plea is "voluntary with an understanding of the charge," § 46-12-204(2), MCA, and the court must inform the defendant of "the consequence of his plea . . . ," § 46-16-105(1)(b), MCA. The law does not require the sentencing court to educate the defendant on all aspects of the relevant law before accepting a guilty plea. However, when the guilty plea is based upon a fundamental mistake or misunderstanding as to its consequences, the sentencing court, at its discretion, may allow the defendant to withdraw the plea.
>
> A change of plea will be permitted only if it fairly appears the defendant was ignorant of his rights and the consequences of his act, or he was unduly and improperly influenced either by hope or by fear in making the plea, or if it appears the plea was entered under some mistake or misapprehension. Each case must be examined on its own record. The motion rests within the District Court's discretion and the exercise of that discretion will not be disturbed absent an abuse of discretion.

*State v. Mesler* (1984), 210 Mont. 92, 96, 682 P.2d 714, 716 (citation deleted).

In this case, Benjamin's guilty plea was based on error. Both the sentencing court and the habeas corpus court found that Benjamin was misinformed as to the consequences of his plea. The record contains sufficient evidence to establish that the sentencing court, prosecutor and defense counsel all apparently failed to recognize that the sexual offender program lasted two years and assured the defendant that he would be incarcerated for only one year.

The usual remedy for a guilty plea that is not voluntarily or knowingly made is to allow the defendant to withdraw the plea. In this case, however, the habeas corpus court exercised its discretion to order Benjamin's release on probation.

*Benjamin*, 792 P.2d at 10.

It is likewise clear in this case, that the defendant was ignorant of the consequences of his plea, unduly influenced by hope that his plea would avoid incarceration, and mistaken in that understanding.

The majority states that "[t]here is nothing in the record to establish that the defendant's plea was based upon a fundamental mistake or misunderstanding as to its consequences."

That statement is clearly incorrect. At the hearing on defendant's motion to withdraw his plea, the attorney who represented him at the time the plea was entered testified. When asked what explanation he gave to the defendant regarding an *Alford* plea, he explained that he told the defendant it was like *nolo contendere*. He told the defendant that he could maintain his innocence but agree that there was sufficient evidence to convict him. More critically, he explained that if the defendant went to

19

trial and was convicted, he was more likely to go to prison than if he entered this plea. He led the defendant to believe that if an *Alford* plea was entered there would be a presentence investigation and a sex offender evaluation which, if favorable, would create a possibility that the defendant could avoid prison. However, he failed to explain that there was no possibility of a favorable sex offender evaluation if the defendant continued to maintain his innocence. The defendant's attorney gave the following testimony:

Q. And let's reiterate again, what your advice was to him concerning the Alford plea. As I understand your testimony, you're suggesting -- or you told Cameron that if you went to trial and if he was found guilty, that there was a good chance after the Judge had heard the victims testify that the Judge would be more inclined to send him to prison?

A. That's correct.

Q. But, that if he pled guilty, and that he had a good evaluation, a good presentence report, that it was possible that you could make an argument that he could avoid going to prison.

A. I told him I would ask to keep him out of prison.

There could not be any clearer evidence that the defendant misunderstood the consequences of his plea. In summary, he was led to believe that he could plead guilty but still maintain his innocence. He was further led to believe that by pleading guilty the court would be less likely to sentence him to prison. However, by pleading guilty to a sex offense and refusing to admit that he actually committed the offense, he disqualified himself from sex offender treatment and guaranteed himself not only a prison

20

sentence, but a longer prison sentence than he would otherwise have to serve. Under these facts, and our prior case law regarding withdrawal of guilty pleas, the District Court abused its discretion by denying defendant the right to withdraw his guilty plea. That does not mean that the defendant, if guilty, avoids accountability for his wrongful act, it simply means that the State should have to prove his guilt, as it was apparently prepared to do, without the assistance of the defendant's plea which was induced by misinformation.

For these reasons I would reverse the judgment of the District Court based on the first issue raised by the defendant, and therefore, do not address the remaining issues raised on this appeal.

_____
Justice

We concur with the foregoing dissent of Justice Trieweiler.

_____

_____
Justices

21

February 20, 1992

CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Michael Donahoe
Attorney at Law
P.O. Box 413
Helena, MT 59624

James Lee Cameron
700 Conley Lake Road
Deer Lodge, MT 59722

Hon. Marc Racicot, Attorney General
Joseph E. Thaggard, Assistant
Justice Bldg.
Helena, MT 59620

Mike McGrath
County Attorney
L & C County Courthouse
Helena, MT 59601

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy