No. 91-533

IN THE SUPREME COURT OF THE STATE OF MONTANA

1992

STATE OF MONTANA,

          Plaintiff and Respondent,

-vs-

CHARLES LEE REYNOLDS, JR.,

          Defendant and Appellant.

FILED

MAY 28 1992

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

      James G. Hunt; Dix & Hunt Law Firm, Helena, Montana

      For Respondent:

      Hon. Marc Racicot, Attorney General; John Paulson,
Assistant Attorney General, Helena, Montana
Mike McGrath, Lewis & Clark County Attorney,
Helena, Montana

Submitted on Briefs:  May 7, 1992

Decided:  May 28, 1992

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from the District Court of the First Judicial District, Lewis and Clark County, concerning the withdrawal of a guilty plea. We affirm.

The sole issue presented for review is whether the District Court erred by denying appellant's motion to withdraw his guilty plea.

The appellant, Charles Lee Reynolds, Jr. (Reynolds), was charged by complaint in the Justice Court of Lewis and Clark County, on January 4, 1990, with the offense of issuing a bad check (common scheme), a felony. On January 25, 1990, a second complaint was filed against Reynolds in Justice Court, charging him with the offense of criminal trespass, a misdemeanor; intimidation, a felony; and forgery, a misdemeanor. At that time an arrest warrant was issued and Reynolds was arrested on that date. Reynolds posted bond in the amount of $2,500.

On March 22, 1990, Reynolds waived a preliminary hearing on the charges in Justice Court and was bound over to District Court. The Lewis and Clark County Attorney filed an information on April 23, 1990, charging Reynolds with the offenses of issuing a bad check, a felony; and forgery, a misdemeanor. Although the record is unclear, it appears that the Lewis and Clark County Attorney dropped the criminal trespass and intimidation charges in the transmission from Justice to District Court.

Four separate short transcripts of the court proceedings are filed in this matter: (1) The May 3, 1990, transcript of Reynolds'

2

initial appearance, arraignment and sentencing in District Court; (2) the April 5, 1991, transcript of the County Attorney's petition to revoke Reynolds' suspended sentence; (3) the July 11, 1991, transcript entitled "Review Hearing;" and (4) the July 25, 1991, transcript of Reynolds' motion to withdraw his guilty plea.

The various transcripts reveal that in early 1990, while Reynolds was under arrest and being held in the county jail, he initiated contact with Sgt. Les Hathcock of the Helena Police Department about becoming a drug informant. After Sgt. Hathcock discussed this matter with the Lewis and Clark County Attorney, they agreed to use Reynolds as an informant. Reynolds acted as an informant for the county between the end of January, 1990 until April, 1990. During that time, he became well acquainted with the police officers and the prosecution staff of Lewis and Clark County. The record indicates that while working as an informant Reynolds testified at several trials which resulted in over twenty drug convictions.

On May 3, 1990, Reynolds appeared before the District Court, without counsel, for his arraignment. At that time the court advised him that by appearing without counsel he was waiving a right to which he was entitled, and the court asked whether he was ready to proceed. Reynolds stated that he did not wish to be represented by counsel. On appeal, Reynolds indicated that one of the reasons he felt he did not need an attorney when he entered his guilty plea was that he had considerable faith in the Lewis and Clark County Attorney.

Before the court accepted Reynolds' guilty plea, Reynolds explained to the court that he and his wife broke up, and as a result of the break up, he was doing considerable drinking and gambling. He further testified that before the charges were brought against him, he issued a number of bad checks to various Helena area merchants knowing his deposits were insufficient to cover the amount of checks he wrote. As to the second charge of forgery, Reynolds testified that he sold a clock for $60 but altered the check by inserting a one before the six thereby making the amount payable appear to be $160. He cashed the check for $160.

After reading the charges in the information to Reynolds, the court said to him:

> THE COURT: . . . And at the time, you knew that [the $60 check] was made or altered in such a manner that it purported to have been made by Fae Tickler. Do you generally understand what's charged in each count?
>
> CHARLES LEE REYNOLDS: Yes, sir.

Thereafter, the court set forth the maximum possible punishment for each offense, and after explaining the same the District Court Judge asked Reynolds, "Do you understand what the maximum possible punishment is?" To which Reynolds replied "Yes, sir."

Then, the court asked Reynolds:

> THE COURT: Now, . . . You are also entitled to be represented by an attorney. You appear here without an attorney and do you wish to be represented by an attorney?
>
> CHARLES LEE REYNOLDS: No, I don't believe so.

4

THE COURT: You feel that under the circumstances you will represent yourself; is that correct?

CHARLES LEE REYNOLDS: Yes.

All of this information was available to the trial judge when he sentenced Reynolds, and the May 3, 1990, transcript reveals considerable discussion between the court and Reynolds prior to his entering a plea.

During the May 3, 1990, proceeding, Reynolds entered his guilty plea and the court proceeded directly to sentencing Reynolds. Accepting the County Attorney's recommendation, Judge Honzel sentenced Reynolds to three years in the state prison and suspended all but time served on the conditions the County Attorney recommended. Judge Honzel stated:

> THE COURT: . . . First of all, you make restitution, and it will probably be in the neighborhood of $3,800, and the restitution officer will get a final amount. We won't leave that hanging forever. And, then, we'll have a final amount probably in thirty days and we'll set that as the time. So, whatever [the restitution officer] comes up with in thirty days, that's what you'll be responsible for. If, for some reason, you think [the restitution officer is] way out of line, you're entitled to a hearing on that, and, then, I'll determine what the exact amount is. Otherwise, we'll go with the figure [the restitution officer] comes up with. And you'll be a law-abiding citizen.
>
> In addition, you'll be given credit for the time that you've already served. I guess the way to do that is, we'll suspend all of it but eight days and you'll be given credit for the time that you served. I guess that's the easiest way to handle that.
>
> As far as the reasons, it does comply with the plea agreement and you have previously had a deferred sentence and you're not entitled to another one and this is the type of an offense which requires restitution. From your standpoint, the one thing that you need to understand is that if you goof up and you don't make restitution or you get into further trouble with the law, the county

5

attorney can ask that your suspended sentence be revoked and that you begin to serve that sentence.

. . .

Approximately one year later, on March 18, 1991, the Lewis and Clark County Attorney petitioned the court to revoke Reynolds' suspended sentence for his failure to make a good faith effort to pay the restitution as required by the judgment of the court. The court held a hearing on that motion on April 5, 1991, wherein the County Attorney elicited testimony that Reynolds made little or no effort to comply with the conditions of his suspended sentence; that he did not make himself available to the restitution officers of Lewis and Clark County; and, as noted by the restitution officer, Reynolds' cooperation with the restitution program was not very positive.

The transcript reveals that the year after Reynolds pled guilty, he had earned income of approximately $16,000, gross, and during December of 1990, and January, February and half of March, 1991, he had drawn unemployment. Out of those funds, a large percentage was taken to pay child support and other expenses, however, Reynolds paid nothing toward fulfilling his restitution obligation.

After that hearing, Reynolds filed a motion to withdraw his guilty plea on June 7, 1991. The court set July 25, 1991, for hearing on that motion.

The record reveals that following Reynolds' guilty plea and sentencing in 1990, he was charged in United States District Court, State of Montana, with a violation of 18 U.S.C. § 922(a)(6), making

6

a false statement on Alcohol, Tobacco and Firearms Form 4473; and violation of 18 U.S.C. § 922(g)(1), being a felon in possession of a firearm for allegedly purchasing a firearm on June 14, 1990. Apparently, Reynolds' motion to withdraw his guilty plea a year later was somewhat influenced by the charges in United States District Court.

The standard of review in cases involving a district court's refusal to allow a defendant to withdraw a guilty plea is whether the district court abused its discretion. State v. Cameron (Mont. 1992), ___ P.2d ___, ___, 49 St.Rep. 150, 152. Absent an abuse of discretion, we will not disturb the district court's decision. Cameron, ___ P.2d at ___, 49 St.Rep. at 152.

Section 46-16-105(2), MCA, allows the court to permit the withdrawal of a guilty plea and substitute in its place a plea of not guilty upon a showing of good cause. This Court considers the following three factors when determining whether a district court erred in refusing to allow a defendant to withdraw his guilty plea:

> (1) the adequacy of the District Court's interrogation at the time the plea was entered as to the defendant's understanding of the consequences of his plea; (2) the promptness with which the defendant attempts to withdraw the prior plea; and (3) the fact that the defendant's plea was the result of a plea bargain.

State v. Walker (1986), 220 Mont. 70, 72, 712 P.2d 1348, 1350 (citation omitted). Here, we carefully considered the above factors in determining whether the District Court abused its discretion in denying Reynolds' motion to withdraw his guilty plea.

In reviewing the first factor, the District Court noted that this Court has held that the procedure it followed is adequate when

7

a district court:

> [E]xamines the defendant, finds him to be competent, and determines from him that his plea of guilty is voluntary, he understands the charge and his possible punishment, he is not acting under the influence of drugs or alcohol, he admits his counsel is competent and he has been well advised, and he declares in open court the facts upon which his guilt is based. . . .

State v. Lewis (1978), 177 Mont. 474, 485, 582 P.2d 346, 352.

Reynolds argues that the District Court's interrogation was inadequate. Reynolds contends that his motion to withdraw his guilty plea should have been granted because he did not have counsel at the time he entered his guilty plea. He further claims that the factual basis for one of his guilty pleas was not sufficiently established in the record; that the court failed to properly inform him of a possible defense or a possible lesser-included offense; and that the court failed to advise him of consequences of pleading guilty.

The District Court noted that in this case Reynolds was not represented by counsel, but he knowingly waived his right to counsel. Further, Reynolds himself initiated discussions about the possibility of being used as an informant in exchange for favorable treatment. In the course of that role as an informant he built a relationship with the Lewis and Clark County law enforcement officers and he came to rely on that affiliation.

In reviewing the second factor, Reynolds argues that he timely made his motion to withdraw his guilty plea. Reynolds did not move to withdraw his guilty plea until some thirteen months after he entered it. In general, filing the motion to withdraw a guilty

8

plea over a year after entry of the guilty plea is untimely. State v. LaTray (1986), 220 Mont. 358, 715 P.2d 52.

Reynolds makes considerable argument concerning his federal court firearm charge, and argues that the State's position that he did not timely move to withdraw his plea, having waited thirteen months after sentencing, is unsubstantiated. We note that due to the federal firearm charge, Reynolds did not, nor could not, have acted much faster because he was not aware of or at least was not arrested for being a felon in possession of a firearm until March 5, 1991, at which time counsel had been appointed for him. However, we do not find that this was the controlling factor in the trial court's decision to deny Reynolds' motion to withdraw his guilty plea.

In reviewing the third factor, Reynolds argues that although his guilty plea resulted from a favorable plea bargain agreement, he was unaware that the plea subjected him to another felony, the possession of a firearm. However, Reynolds received exactly what he bargained for when the District Court sentenced him according to the County Attorney's sentencing recommendations.

Reynolds argues that he was not advised that he could not possess a firearm as a consequence of his guilty plea and that he did not become aware of that regulation until after he had purchased the firearm. To this argument the District Court noted that, as a part of sentencing procedure, it was not aware of any requirement, nor are we, that defendants should be informed that it is illegal for a convicted felon to possess a firearm. Here, as in

9

most proceedings on suspended sentences, Reynolds was informed that he must be a law abiding citizen. If not, the suspended portion of his sentence could be revoked.

Reynolds was sentenced May 3, 1990. Subsequently, he attempted to purchase the firearm on or about June 14, 1990. To obtain the firearm, Reynolds represented on ATF Form 4473 that he had not been convicted of a felony punishable by imprisonment for a term exceeding a year. This was clearly an error. Although Reynolds may not have known at the time of pleading guilty that possessing a firearm was illegal, he certainly became aware of it shortly thereafter when he had to make a false statement to the seller to obtain the firearm. It is impossible for a district court to inform a defendant of every illegal action that could affect the defendant upon entering a guilty plea. The District Court properly considered this factor when denying Reynolds' request to withdraw his guilty plea.

Here, the District Court carefully considered the factors in refusing to permit Reynolds' withdrawal of his guilty plea. Additionally, the court considered that the County Attorney did not include in its information in District Court two of the charges filed in Justice Court; and that the County Attorney recommended a short suspended sentence with unsupervised probation and payment of restitution. When accepting Reynolds' guilty plea and the County Attorney's sentencing recommendations, the court considered and made a concession in view of the fact that Reynolds had a prior felony conviction.

10

This Court has often held that it will not lend its assistance to an accused criminal in escaping his or her obligations of a plea bargain after accepting its benefits. State v. Radi (Mont. 1991), 818 P.2d 1203, 48 St.Rep. 903; State v. Koepplin (1984), 213 Mont. 55, 689 P.2d 921. Considering and balancing all of the factors, we find the District Court was well within its discretion in denying Reynolds' motion to withdraw his guilty plea.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justices

11

Justice Karla M. Gray, concurring in part and dissenting in part.

I concur in the majority opinion insofar as it analyzes the withdrawal of appellant's plea of guilty to the forgery charge. I respectfully dissent from that opinion, however, on the issue of withdrawal of appellant's guilty plea to the charge of issuing a bad check.

The majority notes Reynolds' argument that the District Court's interrogation at the time of entry of the plea was inadequate; it also notes his claim that "the factual basis for one of his guilty pleas [to the charge of issuing a bad check] was not sufficiently established in the record." Having so noted, the majority never addresses this contention. It is my view that Reynolds is correct and that no factual basis for the intent element of the offense of issuing a bad check was established at the time the District Court accepted the plea to that charge.

The record contains the following exchange between the court and Reynolds with regard to the factual basis for the intent element:

> THE COURT: And I take it that during that period of time, last June till this January, you were writing a lot of checks?
>
> CHARLES LEE REYNOLDS: Yes, sir.
>
> THE COURT: And the bank didn't cover a number of those checks; is that right?

12

CHARLES LEE REYNOLDS: Yes, sir.

THE COURT: And you knew at the time that you were short of funds in the account?

CHARLES LEE REYNOLDS: Well, I was making deposits, yeah -- it wasn't clear at the time. I was confused and mixed up and emotionally hurt and I was drinking a lot and gambling a lot to try to pass time.

THE COURT: Whatever deposits you were making, they weren't enough to --

CHARLES LEE REYNOLDS: No, sir.

THE COURT: -- to cover these checks. Where were you making them to, mostly in the bars and casinos?

CHARLES LEE REYNOLDS: Yes.

It is clear that the District Court attempted to establish that Reynolds knew at the time he wrote the checks that his deposits were insufficient to cover those checks. It is my view, however, that Reynolds' testimony was that he was confused, upset and often under the influence of alcohol during the time period at issue. He responded that, as a matter of fact, the deposits he made were not enough to cover the checks. This is not a statement that he knew or intended at the time that the checks would not be covered. Indeed, the record contains no clear statement that Reynolds knew at the time he was writing the checks that there were not sufficient funds in his account to cover the checks. For that reason, I conclude that sufficient factual basis for the intent element of the offense of issuing a bad check is not contained in

13

the record.  Therefore, I would hold that the District Court abused its discretion in denying Reynolds' motion to withdraw his guilty plea to that charge.

_____
Karla M. Gray
Justice

14

May 28, 1992

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


James G. Hunt
DIX & HUNT LAW FIRM
Power Block, Suite 510
Helena, MT 59601

HON. MARC RACICOT, Attorney General
John Paulson, Assistant Attorney General
Justice Building
Helena, MT 59620

MIKE McGRATH, County Attorney
Lewis and Clark County
Courthouse-228 Broadway
Helena, MT 59601

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy