No. 01-337

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 48

STATE OF MONTANA,

Plaintiff and Respondent,

v.

DAVID ARNOLD LIEFERT,

Defendant and Appellant.

APPEAL FROM:   District Court of the First Judicial District,
In and for the County of Broadwater,
The Honorable Dorothy McCarter, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Michael Donahoe, Assistant Federal Defender, Federal Defenders of Montana,          Helena, Montana

For Respondent:

Mike McGrath, Montana Attorney General, Cregg W. Coughlin, Assistant          Montana Attorney General, Helena, Montana; John T. Flynn, Broadwater          County Attorney, Townsend, Montana

Heard: January 15, 2002
Submitted: January 15, 2002
Decided:  March 19, 2002
Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    David Liefert (Liefert) was charged under federal law with unlawfully possessing a firearm, 18 U.S. C. § 922(g)(9), after pleading guilty under state law to partner assault, § 45-5-206, MCA, in Justice Court No. 1, Broadwater County.  After the federal violation was charged, Liefert sought to withdraw his guilty plea to the partner assault in Justice Court, arguing good cause to withdraw his plea because the Justice Court did not inform him of the federal prohibition on possessing a firearm as a result of his plea under state law.  The Justice Court denied the motion, and Liefert appealed the denial to the First Judicial District Court, Broadwater County[1].  The District Court also denied his motion, concluding Liefert did not have to be advised of the federal prohibition because it is a collateral consequence of Liefert's sentence.  Liefert followed with this appeal, again arguing that his guilty plea was not voluntary because he was not informed of the federal limitations on possessing a gun upon conviction for domestic violence under state law.

¶2    We address the following issue on appeal:  Did the District Court err in denying Liefert's motion to withdraw his guilty plea because Liefert was entitled to be informed of the federal firearms prohibition that could result from a state conviction for partner assault?

¶3    We affirm.

[1]There is no appeal to a District Court from a denial of a motion to withdraw a guilty plea in Justice Court. State v. Feight, 2001 MT 205, ¶ 22, 306 Mont. 312, ¶ 22, 33 P.3d 623, ¶ 22. The jurisdictional issue created by Liefert's case is discussed below.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

¶4    On August 25, 1999, Liefert plead guilty to partner assault under § 45-5-206, MCA, in Justice Court No. 1, Broadwater County.  The facts underlying the plea are not part of the record because justice courts are not courts of record.  However, the briefs of the parties indicate that law enforcement responded to a 911 call regarding an argument between Liefert and his wife.

¶5    On May 18, 2000, Liefert was charged with violations of federal laws that prohibit possession of a firearm when someone receives qualifying state convictions. One charge arose under 18 U.S.C. § 922(g)(9) due to Liefert's guilty plea for domestic assault. The other charge arose under 18 U.S.C. § 922(g)(1) due to Liefert's Minnesota conviction for third degree assault. We are only concerned here with the federal charge arising from Liefert's guilty plea to partner assault in Montana. The facts that gave rise to Liefert's possession of a firearm are also not part of the record. However the briefs of the parties indicate that Montana Fish, Wildlife, and Parks authorities discovered Liefert's gun possession during a hunting investigation and reported this possession to the United States Attorney's Office for the District of Montana after learning of his prior convictions.

¶6    After Liefert was charged with the federal violations, he sought to withdraw his guilty plea in Justice Court. The Justice Court denied the motion. The basis for the Justice Court's decision is not part of the record because justice courts are not courts of record.

¶7    Liefert then appealed to the District Court. The District Court held that the Justice Court did not have to inform Liefert of the federal gun prohibition because under State v. Reynolds (1992), 253 Mont. 386, 833 P.2d 153, judges are not required to inform defendants of the collateral consequences of a guilty plea. Therefore, the District Court held that there was no good cause for Liefert to withdraw his plea.

¶8    We have held that there is no appeal to a District Court from the denial of a motion to withdraw a guilty plea in Justice Court. State v. Feight, 2001 MT 205, ¶ 22, 306 Mont. 312, ¶ 22, 33 P.3d 623, ¶ 22. Further, lack of proper jurisdiction can always be raised at any point in a proceeding. State v. LaPier (1998), 289 Mont. 392, 395, 961 P.2d 1274, 1276; § 46-13-101(3), MCA. The State asserts here that jurisdiction was not proper in District Court and that Liefert's appeal should therefore be dismissed. However, the State also suggests that Liefert's appeal could be deemed as one for post conviction relief, which is an alternative not addressed in Feight. See State v. Feight, 2001 MT 205, ¶ 16 n.2, 306 Mont. 312, ¶ 16 n.2, 33 P.3d 623, ¶ 16 n.2. Without deciding the issue of whether a petition for post conviction relief is proper in all similarly situated cases, we accept the State's suggestion to deem this case a request for post conviction relief for purposes of this case only. Accordingly, we address the issue of whether Liefert had good cause to withdraw his plea.

## II. STANDARD OF REVIEW

¶9    In order for a guilty plea to validly waive constitutional protections, the defendant's guilty plea must be a voluntary, knowing, and intelligent choice among options. State v. Radi (1991), 250 Mont. 155, 159, 818 P.2d 1203, 1206 (citing North Carolina v. Alford (1970), 400 U.S. 25, 91 S.Ct. 160, 27 L. Ed.2d 162); see § 46-12-210, MCA. The defendant must be aware of the rights waived including such rights as the right to a jury trial, to counsel, or the right against self incrimination. State v. Yother (1992), 253 Mont. 128, 130, 831 P.2d 1347, 1348.

¶10    A district court may permit the withdrawal of a guilty plea for good cause. Section 46-16-105(2), MCA. "The fundamental purpose of allowing the withdrawal of a guilty plea is to prevent the possibility of convicting an innocent [person]." State v. Johnson (1995), 274 Mont. 124, 127, 907 P.2d 150, 152.

This Court reviews denial of a motion to withdraw a guilty plea for abuse of discretion. State v. Bowley (1997), 282 Mont. 298, 304, 938 P.2d 592, 595. We consider three factors in this review:

1. the adequacy of the court's interrogation at the time the plea was entered regarding the defendant's understanding of the consequences of the plea;

2. the promptness with which the defendant attempts to withdraw the plea;

3. the fact that the plea was the result of a plea bargain in which the guilty plea was given in exchange for dismissal of another charge.

Bowley, 282 Mont. at 304, 938 P.2d at 595. In this case, there was no plea agreement and the State does not dispute that Liefert's attempt to withdraw his plea was prompt. Therefore, the only factor at issue is whether the Justice Court's plea colloquy was adequate even though it did not inform Liefert of the consequence of the federal prohibition on possession of firearms as a result of a state conviction for domestic violence, in this case, partner assault.

## III. DISCUSSION

A. Issues Not Addressed in this Opinion

¶11    Before we turn to the issue presented to this Court, it is important that we clarify the issues this Opinion does not address. These issues were noted by the parties in briefs and at oral argument, but were not otherwise presented to the Justice Court, District Court, or this Court for decision. First, we do not address whether, under Montana state law, Liefert's civil rights were restored when he completed his sentence for partner assault. Liefert noted that he presented different issues in disputing his charges in federal court. In federal court, Liefert argued that under 18 U.S.C. § 921(a)(20) and (a)(33)(B)(ii), a defendant should no longer be subject to the federal prohibition if that defendant's civil rights were restored by state law, i.e., if the state considered the punishment complete. Liefert argued in federal court that the determination of when rights are restored is a matter of state law and that Liefert's rights should be considered restored under Montana law because he completed his sentence. However, Liefert did not present the issue of the restoration of his rights in state court. Therefore, we do not address whether under state law, Liefert's rights were restored.[2]

[2]The United States District Court for Montana ruled that Liefert's rights were restored when he completed his sentence. United States v. Liefert, CR 00-9-H-7798 (D.Mont. Sept. 27, 2000). The Ninth Circuit reversed this decision in an unreported opinion. No. 00-30327, 2001 WL 868037 (9th Cir. July 30, 2001). Liefert has a pending petition for certiorari on this issue. U.S. Oct. 19, 2001 (No. 01-7615).

The United States Supreme Court has accepted certiorari on the related issue of whether a federal court can restore a defendant's gun rights upon petition under 18 U.S.C. § 925(c) when the administrative process for restoration of gun rights has not yet taken place. Bean v. Bureau of Alcohol, Tobacco and Firearms

(5th Cir. 2001), 253 F.3d 234, cert. granted, __ U.S. __, __

¶12    Second, the State noted that under United States v. Akins (9th Cir. 2002), __ F.3d __, 2002 WL 24358, Liefert's plea might not be adequate for the purposes of 18 U.S.C. § 922(g) in part because it was not taken in a court of record with the consequence that the plea colloquy was not detailed in a record. However, Liefert noted that the federal charges against him have not been dismissed. Accordingly, we assume for purposes of this appeal that 18 U.S.C. § 922(g)(9) applies to Liefert, regardless of the Akins issue.

¶13    Third, the State noted that it believed there was a possible issue that Congress exceeded its power in enacting 18 U.S.C. § 922(g)(9) by imposing such a restriction on firearms when a gun is not used in the underlying domestic violence case. Again, this issue was not presented here and it would not be within the purview of this Court's power to decide this issue, in any event.

¶14    Finally, regarding the adequacy of the plea colloquy, Liefert did not assert that gun possession is such that every defendant in every case is entitled to be informed that as a result of a conviction, the defendant's possession of firearms may be limited. In other words, Liefert did not assert that a judge must inform every defendant of the affect of a guilty plea on gun possession, the same as a judge must inform a defendant of trial related rights such as the right to trial by jury, to be represented by counsel, the right against self incrimination, or other like rights. See Yother, 253 Mont. at 130, 831 P.2d at 1348; Boykin v. Alabama (1969), 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274. Rather, Liefert only presented the issue of whether a trial court must inform a defendant during its plea colloquy of the federal limitations on gun possession in 18 U.S.C. § 922(g) when a defendant is charged with partner assault under § 45-5-206, MCA. We now turn to that issue.

B. The Parties' Positions

¶15    In support of his argument that the Justice Court's plea colloquy was inadequate and that his resultant guilty plea was not voluntary, Liefert notes that a trial court is required to inform a defendant of the maximum penalty allowed by law. See § 46-12-210(a)(iii) and § 46-16-105(1), MCA. He also cites United States v. Batchelder (1979), 442 U.S. 114, 123, 99 S.Ct. 2198, 2204, 60 L.Ed.2d 755, observing that a sentencing statute, like any other punitive statute, must give fair warning of the punishment that can result from a violation. Further, Liefert points out that under the state statutes, § 45-5-206(7) and § 46-18-202(1)(b), MCA, the gun restriction is discretionary, whereas in the federal statute, 18 U.S.C. § 922(g), the gun restriction is not discretionary, but mandatory.

¶16    Based on these uncontroverted points, Liefert asserts that by reading the state statute, § 45-5-206, MCA, and the federal statute, 18 U.S.C. § 922(g)(9), together, the federal law preempts the state law such that there is a mandatory restriction on firearms. He further asserts that by reading the state and federal statutes together, due process requires that the Justice Court should have informed Liefert of the federal prohibition in order to give him fair warning regarding gun restrictions. By reading the state statute alone, Liefert argues a defendant is given a "negative implication" that the defendant's gun rights are completely at the discretion of the state court judge.

¶17    Liefert also points out that under § 46-12-210(f), MCA, courts are required to inform defendants

in Montana that a guilty plea may have consequences under federal immigration law. Liefert asserts that defendants should similarly be informed of the federal consequences and restrictions on gun possession when pleading guilty to partner assault under state law.

¶18    In contrast, the State asserts that judges are not required to inform defendants of the collateral consequences of a plea. The State argues that under our precedent, 18 U.S.C. § 922(g) is a collateral consequence. Further, the State asserts that the requirement regarding federal immigration law was a policy determination made by the Legislature and that any similar requirements regarding gun possession must also be based on legislative action.

C. The Federal Restrictions of 18 U.S.C. § 922(g) are Collateral Consequences.

¶19    In Montana, if a defendant is convicted of partner assault under § 45-5-206, MCA, the trial court "may prohibit an offender convicted under this section from possession or use of the firearm used in the assault." Section 45-5-206(7), MCA; see also § 46-18-202(1)(b), MCA (providing judges with the general discretion to restrict gun possession for any state crimes). The federal statute at issue, 18 U.S.C. § 922(g)(9), reads:

> It shall be unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

See also 18 U.S.C. §§ 922(g)(8), (d)(8) and (d)(9)[3]. The federal law also provides for its effect on state law as follows:

> No provision of this chapter shall be construed as indicating an intent on the part of the Congress to occupy the field in which such provision operates to the exclusion of the law of any State on the same subject matter, unless there is a direct and positive conflict between such provision and the law of the State so that the two cannot be reconciled or consistently stand together.

Title 18, U.S.C. 927. These statutes serve as the basis of Liefert's appeal.

¶20    Under the age old maxim that people are presumed to know the law, Liefert is of course presumed to be aware of both the state and federal statutes. State v. Lynn (1990), 243 Mont. 430, 435-36, 795 P.2d 429, 433. Therefore, his actual knowledge is not at issue. Rather, the issue is whether the state trial court had a duty to inform Liefert of the federal consequences of a state guilty plea.

[3]18 U.S.C. § 922(g)(8) reads:

It shall be unlawful for any person . . . who is subject to a court order that--

(A) was issued after a hearing of which such person received actual notice, and at which such person had an opportunity to participate;

(B) restrains such person from harassing, stalking, or threatening an intimate partner of such person or child of such intimate partner or person, or engaging in other conduct that would place an intimate partner in reasonable fear of bodily injury to the partner or child; and

(C) (i) includes a finding that such person represents a credible threat to the physical safety of such intimate partner or child; or (ii) by its terms explicitly prohibits the use, attempted use, or threatened use of physical force against such intimate partner or child that would reasonably be expected to cause bodily injury, . . . to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

¶21    Because it is impossible for a judge to inform a defendant of every possible consequence of a guilty plea, most courts have adopted the prevailing rule that judges are only required to inform defendants regarding the direct consequences of a guilty plea and are not required to inform defendants regarding the collateral consequences.  See Torrey v. Estelle (9th Cir. 1988), 842 F.2d 234, 235.  While we have not explicitly adopted this rule in Montana, we have actually applied this rule on a case by case basis by analyzing specific consequences to determine whether a district court must inform a defendant of that consequence before accepting a guilty plea.  See State v. Buckman (1989), 236 Mont. 37, 43, 768 P.2d 1361, 1365 (court not required to inform defendant of all implications regarding parole eligibility); State v. Skroch (1994), 267 Mont. 349, 357, 883 P.2d 1256, 1262 (court not required to inform defendant of requirement to register as a sex offender until sentencing hearing); State v. Thomas (1997), 285 Mont. 112, 122, 946 P.2d 140, 146 (§ 46-12-210, MCA, is modeled after Fed.R.Crim.P. 11(c); defendant not entitled to be informed of all conceivable consequences regarding parole eligibility).  We now explicitly adopt the rule that under § 46-12-210, MCA, and related statutes, district courts are only required to inform defendants of the direct, rather than the collateral, consequences of a guilty plea.

¶22    The question presented in this appeal thus turns on whether the federal consequences of Liefert's plea are direct or collateral.  A consequence is direct if it has a "definite, immediate, and largely automatic effect" on the defendant.  United States v. Bouthot (1st Cir. 1989), 878 F.2d 1506, 1511.  In contrast, a consequence is collateral if a defendant has control over whether or not the consequence occurs.  Torrey, 842 F.2d at 236.  In addition, a consequence is collateral if it is not under the control of the sentencing judge or it is a procedure under the control of a different sovereign or different agency.  United States v. Long (7th Cir. 1988), 852 F.2d 975, 979.

¶23    Long addressed the same general issue presented here, but from the perspective of a federal court.

In Long, the court stated:

> [T]he state and federal systems are separate and distinct, and the defendant need only be informed of the direct consequences he may face within the particular system. Therefore, the state court, even if knowledgeable about federal criminal law, need not undertake to inform the defendant of his potential federal criminal liability: the nature of the state sentence was unaffected by the federal prosecution and sentence.

See also United States v. Maestas (5th Cir. 1991), 941 F.2d 273, 279; United States v. Jordan (7th Cir. 1989), 870 F.2d 1310, 1317 ("federal prosecution was only a possibility, over which the State's Attorney had no control"); Bouthot, 878 F.2d at 1511 ("federal firearms prosecution [under 18 U.S.C. § 922] was not a largely automatic, definite, or immediate consequence of the state guilty pleas"); United States v. Campusano (1st Cir. 1991), 947 F.2d 1, 5.

¶24    We have previously briefly addressed the issue of whether trial courts must bring federal consequences to the attention of a defendant.  In Reynolds, a case closely analogous to the case at bar, the defendant attempted to withdraw his guilty plea in state court after being charged with illegal possession of a weapon in federal court under 18 U.S.C. § 922(g)(1).  Reynolds, 253 Mont. at 390, 833 P.2d at 154.  The defendant attempted to withdraw his plea in part on the grounds that his plea was involuntary because he was not informed of the federal consequences of 18 U.S.C. § 922(g)(1), which prohibits anyone convicted of a state felony from possessing a weapon.  Reynolds had pled guilty in state court to issuing a bad check, a felony, and to forgery, a misdemeanor.   Reynolds, 253 Mont. at 387, 833 P.2d at 154.  We held that trial courts do not have to inform defendants of "every illegal action that could affect the defendant upon entering a guilty plea" and we agreed with the trial court that there was no specific affirmative requirement to inform the defendant of the federal ramifications in that case. Reynolds, 253 Mont. at 392, 833 P.2d at 156-57; see also State v. Miller (1991), 248 Mont. 194, 196-98, 810 P.2d 308, 309-10 (failure to inform client  regarding federal consequences of guilty plea does not constitute fundamental mistake in plea agreement).

¶25    Turning to this case, Liefert had discretionary control over whether he would be in violation of federal law upon entry of his guilty plea.  He would be in violation of federal law if he chose to possess a weapon; he would not be in violation of federal law if he made the opposite choice.  Further, Liefert's federal prosecution is under the control of a different sovereign entity.  Therefore, we hold that the consequence of a potential federal firearms prosecution under 18 U.S.C. § 922 is a collateral consequence because the consequence is not an automatic, definite, or immediate consequence of a state guilty plea and because the consequence is under the control of the federal government.  See also Saadiq v. Iowa (Iowa 1986), 387 N.W.2d 315, 325 (holding that restriction on firearms under a different section of Iowa law was a collateral consequence); Reponte v. State (Haw. 1976), 556 P.2d 577, 584 (restriction on holding a gun is a collateral consequence).  Accordingly, the trial court was not required to inform Liefert of this collateral consequence, and Liefert's guilty plea was properly accepted as a voluntary and knowing plea.

¶26    Regarding Liefert's due process/federal preemption/"negative implication" argument, Liefert cites

Batchelder in support of the proposition that statutes must give fair warning. However, he does not cite authority for the proposition that federal and state statutes, when taken and read together, must give fair warning. While we agree that 18 U.S.C. § 922 applies here, see Caron v. United States (1998), 524 U.S. 308, 316, 118 S.Ct. 2007, 2012, 141 L.Ed.2d 303 (applying 18 U.S.C. § 922 to state convictions and citing other similar federal cases), we do not agree that federal prohibitions contingent on a state conviction or any other predicate offense requires reading those statutes together in the context of accepting guilty pleas. In fact, Batchelder explicitly dealt with the notice given by two federal statutes when read together, and held that the plain language of each is considered on its own:

> The provisions in issue here, however, unambiguously specify the activity proscribed and the penalties available upon conviction. . . . That this particular conduct may violate both Titles does not detract from the notice afforded by each. Although the statutes create uncertainty as to which crime may be charged and therefore what penalties may be imposed, they do so to no greater extent than would a single statute authorizing various alternative punishments. So long as overlapping criminal provisions clearly define the conduct prohibited and the punishment authorized, the notice requirements of the Due Process Clause are satisfied.

Batchelder, 442 U.S. at 123, 99 S.Ct. at 2204, 60 L.Ed.2d 755. Batchelder also found the rule of lenity, requiring ambiguous statutes to be interpreted in favor of a defendant, unavailing because the rule does not overcome unambiguous statutory readings. See State v. Turner (1993), 262 Mont. 39, 49-50, 864 P.2d 235, 241 (§ 45-1-102(2), MCA, provides that penal statutes are not strictly construed, leniency only applies when statutes create an ambiguity). In this case, the state and federal statutes each unambiguously specify the punishment that may be brought by each entity. Therefore, we hold that Liefert's due process rights of fair warning were not violated. We note in making this holding, that neither Liefert nor the dissent cite any authority in support of the "negative implication" argument.

¶27 In making the "negative implication" argument, Liefert attempts to distinguish Reynolds by noting that the state statute on partner assault specifically mentions that a judge has the discretion to limit gun possession, while the statute regarding issuing bad checks does not. However, as Liefert himself concedes, this distinction is meaningless in light of the fact that trial courts can generally limit gun possession for any crime under § 46-18-202(1)(b), MCA.

¶28 As to Liefert's argument that Montana courts must inform defendants of federal restrictions on gun possession because § 46-12-210(f), MCA, requires these courts to notify defendants of the federal consequences of deportation, we note that currently under federal law, federal courts are not required to inform defendants regarding deportation. See Fed.R.Crim.P. 11(c). To the contrary, federal circuit courts generally hold that the consequences of deportation are collateral. United States v. Gonzalez (1st Cir. 2000), 202 F.3d 20, 28. This indicates that Montana's requirement under § 46-12-210(f), MCA, is a purely statutory requirement. Consequently, if Montana's courts are to inform defendants of other collateral consequences of a state guilty plea, such as the possibility of federal gun restrictions, such a requirement is properly left to the Legislature as a policy decision.

¶29 Finally, we briefly note that Liefert cites no authority for his equitable argument that trial courts should inform defendants of the federal restrictions because possessing a gun is more important in this state than it would be in other states. We decline to establish a precedent based on no legal authority whatsoever.

¶30 Further, we will not consider his equitable argument that he pled guilty because he could not afford bail and he needed to get out of jail in order to timely harvest his wheat. We have held that a plea is not involuntary simply because it was entered to avoid the possibility of a greater punishment at trial. State v. Milinovich (1994), 269 Mont. 68, 71, 887 P.2d 214, 216 (citing Brady v. United States (1970), 397 U.S. 742, 751, 90 S.Ct. 1463, 1470, 25 L.Ed.2d 747). Likewise, a plea is not involuntary simply because a defendant views its punishment as lesser than his immediate personal consequences.

## CONCLUSION

¶31 The District Court did not err in denying Liefert's motion to withdraw his guilty plea. Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ TERRY N. TRIEWEILER
/S/ JIM RICE

Justice Jim Regnier concurring.

¶32 While I concur with the ultimate result reached by the Court, I disagree with the Court's "postconviction relief" justification for its conclusion that the District Court had jurisdiction to hear Liefert's appeal. Here, as in Feight, Liefert simply filed a notice of appeal with the District Court challenging the Justice Court's denial of his motion to withdraw the guilty plea. This was the identical mechanism for appeal employed by the defendants in Feight to challenge the validity of their guilty pleas. Yet the Court in Feight curiously chose not to pursue the "postconviction relief" jurisdictional analysis. The logic in treating these indistinct appeals altogether differently eludes me.

¶33 Although Liefert did not file a petition for postconviction relief, in my view the Court deems his appeal as such simply to rectify the jurisdictional quandary created by Feight. The Court's effort to craft such a subjective solution to the Feight dilemma necessarily results in arbitrary and unfair treatment of the litigants who appear before us. Rather than construing Liefert's notice of appeal as a petition for

postconviction relief, I would simply treat it as a notice of appeal and hold that the District Court had jurisdiction to consider the appeal pursuant to §§ 3-5-303 and 46-20-104, MCA, as outlined in my dissent in Feight.

/S/ JIM REGNIER

Justice Patricia O. Cotter specially concurs,

¶34    I concur with Justice Regnier.  As long as Feight is the law of the land for those who seek to appeal from a justice court's order denying a motion to withdraw a guilty plea, it should be consistently and unfailingly applied to everyone who attempts to appeal from such an order.  If on the other hand, we have so little confidence in its correctness that we must devise methods to avoid its consequences, as we do here, then we should say so.  I would re-examine our holding in Feight, and correct the error we made in that case.

¶35    In Justice Regnier's dissent in Feight, in which Justice Trieweiler and I joined, Justice Regnier concluded that the general right to appeal found in § 46-20-104, MCA, and § 3-5-303, MCA, should have controlled the disposition of that case, in light of the fact that none of the statutes limiting appeals from the justice court to the district court applied to the situation before the Court.  Feight, ¶ 34 (Regnier, J., dissenting).  Justice Regnier argued that the inquiry is not, as the majority in Feight concluded, whether any specific statute authorizes an appeal.  Rather, the inquiry should be whether any statute precludes such an appeal.  I agree.  There is additional statutory authority for this proposition, cited by Leifert, that was not addressed by either the majority or the dissent in Feight.

¶36    Leifert argued that, absent any specific statute precluding an appeal from an order denying a motion to withdraw a guilty plea in justice court (and we agreed in Feight that there was none), he was entitled to the benefit of § 46-1-103(1), MCA, which provides:

> This title governs the practice and procedure in all criminal proceedings in the courts of Montana except where provision for a different procedure is specifically provided by law.  The meaning of this language is clear.  The rights afforded under Title 46 apply in all criminal proceedings, except where a specific provision provides a countervailing procedure.

¶37    In Feight, we held:

> Accordingly,   §§ 3-5-303, 46-17-203, 46-17-311 and 46-12-204, MCA, being the specific legislative scheme defining the jurisdiction of district courts to hear appeals from justice courts, these statutes control over § 46-20-104, MCA, which only generally defines the scope of criminal appeals by the defendant.

Feight, ¶ 21.  Significantly, none of these listed statutes specifically strips from a justice court defendant the right to appeal from a denial of a motion to withdraw a guilty plea.  This being so, then the general right of appeal found at § 46-20-104, MCA, is not displaced or  superseded, and cannot, if § 46-1-103, MCA,  is to be given its clear meaning, be abrogated by the type of statutory construction in which the majority engaged in Feight.

¶38    Contrary to our holding in Feight, the fact that § 46-20-104, MCA, is a general criminal statute does not mean it is displaced by specific justice court statutes.  In State v. Tweedy (1996), 277 Mont. 313, 922 P.2d 1134, we were confronted with the question of whether the provisions of § 46-18-116, MCA (dealing with the requirement of a signed judgment), should apply to proceedings in justice court, which were prescribed by the provisions of Chapter 17 of Title 46.  Citing § 46-1-103(1), MCA, as our authority, we concluded that unless a different procedure for justice court was specifically outlined, the requisites of other chapters of Title 46 should be applied to criminal proceedings in justice court.  Tweedy, 277 Mont. at 317, 922 P.2d at 1136.  The same result is compelled here.

¶39    When the majority faulted Feight for his inability to point to any statutory authority for a right to appeal to the District Court from a denial of a motion to withdraw a guilty plea (Feight, ¶ 17, emphasis mine), the majority imposed upon Feight a burden that was not his, or that of any other defendant in a similar situation, to carry.  Simply put, the right of appeal from a final order exists unless abrogated by specific statute.  No such statute being found, it was error for this Court to judicially eliminate Feight's statutory right under § 46-20-104(1), MCA, to appeal from a final order affecting his substantial rights.

¶40    Finally, we also held in Tweedy that a party cannot consent to subject matter jurisdiction that is lacking, or waive a want of jurisdiction.  Tweedy, 277 Mont. at 315, 922 P.2d at 1135.  Yet, this is what occurred here when--contrary to our holding in Feight--we accepted jurisdiction pursuant to the State's creative (and, I submit erroneous) interpretation of our postconviction statutes.

¶41    As Justice Regnier urges, I would accept Leifert's notice of appeal for just what it is, and would hold the District Court had jurisdiction to consider it.  In the process, I would overrule Feight.


/S/ PATRICIA COTTER


Justice Jim Regnier, concurs in the foregoing special concurrence,

/S/ JIM REGNIER


Justice W. William Leaphart dissenting.

¶42    I dissent.  There is merit to Leifert's "negative implication" argument.  We engage in the legal fiction that citizens such as Leifert are aware of the law, both at the federal and state level.  However, in the context of this case, awareness of the state and federal law, at best, results in a state of confusion.

Liefert appeared before a state court judge to be sentenced for the offense of partner assault. Section 45-5-206, MCA. The Montana statute setting forth the possible punishment for partner assault specifically provides that the court "may" prohibit an offender from possession or use of the firearm used in the assault. Section 45-5-206(7), MCA. Thus, the imposition of a firearm restriction appears to be discretionary with the state court judge. Here, the state court judge exercised his discretion and chose not to impose a firearm restriction. By negative implication, Liefert was free to possess a firearm. We assume however, as we must, that Liefert is also aware of the federal law, 18 U.S.C. Sec. 922(g)(9), which makes a firearm restriction mandatory upon a state court conviction for domestic abuse. Must we assume, however, that Liefert is aware that, if there is a conflict between federal and state law, the federal law controls and that, despite the wording of the state statute, the state court judge has no discretion in the matter? If we are to assume that Liefert is aware of these jurisprudential nuances, should not Liefert, in turn, be able to assume that the sentencing judge, who is certainly more schooled than Liefert in these matters, would advise and warn Liefert that, regardless of what the state court does or does not do with regard to firearm restriction, the federal law controls?

¶43    Liefert has a due process right to fair warning of conduct which would be considered criminal. Art. II, Sec. 17, Mont. Const.; § 45-1-102(1)(c), MCA. Montana law specifically states that the common law rule that penal statutes are to be strictly construed has no application to the Montana criminal law code. Section 45-1-102(2), MCA. The Court acknowledges that ambiguous statutes are to be interpreted in favor of a defendant. However, the Court concludes that this rule does not pertain here since the statutes at issue each unambiguously specify the punishment that may be brought by each entity. While that may be true if you look at each statute in a vacuum, the fact is that the federal sanction is contingent upon the state conviction and, thus, the two statutes must be read in conjunction with one another. When they are read together, to say there is an ambiguity is an understatement.

¶44    In my view, even if we assume Liefert was aware of state and federal law, we have merely attributed to him a state of confusion. The federal sanction is triggered by a conviction under state law. The state law, in turn, purports to give the state judge some discretion to impose firearm restrictions. It is one thing to assume that Liefert is aware of the federal and state law. It is quite another to assume that he has the legal acumen to discern that the state judge, before whom he appeared for sentencing, despite the clear implication of the state statutory scheme, actually had no say in the matter of firearm restrictions.

¶45    I conclude that Liefert was denied his due process right to fair warning.


                                    /S/ W. WILLIAM
                LEAPHART