No. 04-756

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 228

CHRISTOPHER J. DUFFY,

   Plaintiff and Appellant,

   v.

STATE OF MONTANA,

   Respondent and Respondent.

APPEAL FROM:   District Court of the Sixth Judicial District,
In and for the County of Park, Cause No. DV 04-75,
The Honorable Wm. Nels Swandal, Judge presiding.

COUNSEL OF RECORD:

   For Appellant:

   Terry F. Schaplow, Attorney at Law, Bozeman, Montana

   For Respondent:

   Hon. Mike McGrath, Attorney General; Jim Wheelis,
Assistant Attorney General, Helena, Montana

   Tara Depuy, County Attorney; Brett D. Linneweber, Deputy County
Attorney, Livingston, Montana

Submitted on Briefs:  August 17, 2005

Decided:   September 13, 2005

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1      The Appellant, Christopher J. Duffy (Duffy), appeals from a decision of the District Court of the Sixth Judicial District, Park County, denying his motion to withdraw his guilty plea. We affirm.

¶2      We address whether the District Court properly denied Duffy's motion to withdraw his guilty plea.

## BACKGROUND

¶3      Police arrested Duffy on March 8, 2004, for partner or family member assault, a misdemeanor, in violation of § 45-5-206, MCA. He remained in jail until he appeared before Park County Justice of the Peace Deanna Egeland the next morning. Duffy then entered a plea of guilty.

¶4      Duffy alleges that Judge Egeland directed him over to the clerk of court to sign a waiver of rights form after entering his guilty plea. Duffy claims that he signed the waiver only after the clerk of court informed him that "you really do not have a case." Duffy now maintains that he was taking a prescription medication, hydroxyzine, for a rash at the time of his appearance. A listed side effect of the medication is "drowsiness."

¶5      Duffy filed a motion to withdraw his guilty plea on March 12, 2004, on the grounds that it was involuntary. Judge Egeland denied the motion. Duffy timely petitioned the District Court for post-conviction relief from the denial of his request to withdraw his plea and the District Court held a hearing.

¶6      Duffy argued to the District Court that his plea was involuntary. He claimed first that Judge Egeland failed to inform him of his constitutional rights before he entered a plea or

2

explain the collateral consequences of a guilty plea, including 18 U.S.C. § 922(g)(9), the federal law that permanently prohibits a person convicted of misdemeanor domestic violence from owning a firearm. He also alleged the clerk of the court unduly influenced him by advising him he did not have a case. Finally, he maintained that the hydroxyzine he had been prescribed for a rash contributed to a "frazzled" state that rendered him mentally incompetent to enter a plea.

¶7 Judge Egeland testified at Duffy's hearing that she follows a regular routine when informing defendants of their constitutional rights. She follows a checklist that she marks while conducting an appearance. The comprehensive checklist contains all relevant constitutional rights and federal law. She testified that she followed this routine in Duffy's case and that she specifically explained the federal law regarding firearms.

¶8 Duffy did not dispute before the District Court that Judge Egeland gave him the opportunity to ask questions during his appearance and that he asked none. And he did not dispute that during his appearance he was not under the influence of drugs or alcohol. In fact, he failed to mention his claimed use of hydroxyzine at that time.

¶9 The District Court found Judge Egeland's testimony to be more credible. It found that Judge Egeland had informed Duffy fully of his rights and that he understood these rights before he entered his guilty plea. The District Court also found Duffy knew of the federal restrictions on firearms. It did not find Duffy's testimony credible, and stated that any discrepancy between Duffy's testimony and Judge Egeland should be resolved in favor of Judge Egeland. The District Court denied Duffy's motion to withdraw his plea on August 3, 2004. This appeal followed.

3

**STANDARD OF REVIEW**

¶10    We review Duffy's petition to withdraw his guilty plea to determine if it was voluntary. *State v. Lone Elk*, 2005 MT 56, ¶ 10, 326 Mont. 214, ¶ 10, 108 P.3d 500, ¶ 10. Whether the facts meet the standard for voluntariness presents a mixed question of law and fact. This Court reviews mixed questions of law and fact de novo, including the voluntariness of plea agreements. *Lone Elk*, ¶ 10.

¶11    We review a district court's underlying factual findings to determine if they are clearly erroneous. *State v. Warclub*, 2005 MT 149, ¶ 24, 327 Mont. 352, ¶ 24, 114 P.3d 254, ¶ 24.

**DISCUSSION**

¶12    The "test for withdrawal of a plea is voluntariness." *Lone Elk*, ¶ 14. A plea is voluntary when entered into fully aware of the direct consequences. *Brady v. U.S.* (1970), 397 U.S. 742, 755, 90 S.Ct. 1463, 1472, 25 L.Ed.2d 747 (citation omitted).

Waiver

¶13    Duffy maintains that his plea was involuntary because he did not understand the direct consequences of waiving his constitutional rights. A waiver of constitutional rights is valid if it represents a "voluntary, knowing, and intelligent choice among the alternative courses of action open to the defendant." *State v. Radi* (1991), 250 Mont. 155, 159, 818 P.2d 1203, 1206 (citing *North Carolina v. Alford* (1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162). A defendant must be aware of the rights waived, such as the right to counsel, the right to remain silent, and the right to a jury. *See State v. Yother* (1992), 253 Mont. 128, 831 P.2d 1347.

4

¶14 The District Court determined that Judge Egeland fully advised Duffy of his constitutional rights at his appearance. We rely on a district court's determination of an underlying fact absent clear error. *Warclub*, ¶ 24. Duffy gave no indication during his appearance that he did not understand his rights. He had the opportunity to have Judge Egeland explain any matter further and he asked no questions. Duffy cannot now claim that he was unaware when the District Court found that he clearly understood his rights at the time he entered his guilty plea. *See State v. Keys*, 1999 MT 10, 293 Mont. 81, 973 P.2d 812 (overruled on other grounds by *Lone Elk*, ¶ 23).

¶15 Duffy further contends that his plea was involuntary because the clerk of the court allegedly advised him that he did not have a case before he signed the waiver. An informed plea "must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business." *Brady*, 397 U.S. at 755 (citation omitted).

¶16 Even if taken as true, the clerk of court's alleged comment does not constitute grounds to withdraw a guilty plea. The statement cannot be classified as a threat, misrepresentation, or improper promise under *Brady*. The clerk did not induce or coerce Duffy into pleading guilty. The District Court found, and we agree, that Judge Egeland had explained the contents of the waiver before Duffy entered his guilty plea. Furthermore, the statement itself, if actually made, represented merely an opinion of the clerk of court, who had no authority over Duffy and did not speak for the court.

¶17 If the clerk of court actually made the statement, however, we condemn it. Under no

circumstances can we condone a court officer providing legal advice or opinions to criminal defendants. We further admonish judges of the courts of limited jurisdiction to instruct their clerks of court and other court officers never to dispense legal advice or opinions to criminal defendants.

### Collateral Consequences

¶18 Duffy also claims his plea was involuntary because Judge Egeland failed to inform him of 18 U.S.C. § 922(g)(9), the federal law restricting ownership of firearms. The District Court determined that Judge Egeland fully informed Duffy of all collateral consequences, however, including the federal firearm statute, before he entered his plea. We agree with the factual findings of the District Court, but also note that Montana law does not require a court to advise a defendant of potential federal firearm restrictions. A potential federal firearms prosecution represents a collateral consequence to a conviction under state law. *State v. Liefert*, 2002 MT 48, ¶ 25, 309 Mont. 19, ¶ 25, 43 P.3d 329, ¶ 25. District courts are not required to inform defendants of the collateral consequences of a guilty plea. *Liefert*, ¶ 21.

### Mental Competency

¶19 Finally, Duffy claims that his medication, hydroxyzine, rendered him mentally incompetent to enter a guilty plea. This Court recognizes that medication can, in some circumstances, affect a defendant's mental state to such a degree that a plea cannot be entered voluntarily. *Lone Elk*, ¶ 28. We do not find such circumstances in this case. Claims that a drug may cause drowsiness, without more than a defendant's testimony that he was "frazzled" at his appearance, do not rise to the level sufficient to warrant withdrawal of a guilty plea based on alleged mental incompetence.

¶20    Affirmed.

/S/ BRIAN MORRIS

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA O. COTTER
/S/ W. WILLIAM LEAPHART
/S/ JAMES C. NELSON

Justice James C. Nelson concurs.

¶21    I concur in our Opinion.  We condemn the clerk of court's comments (if she made them) and admonish the courts to instruct their clerks not to dispense legal advice.  That, of course, is appropriate.  However, we fail to provide the substantial legal basis underlying this direction.  I write separately to provide that.

¶22    Title 46, Chapter 12, Parts 1 and 2 and § 46-17-203, MCA, prescribe the manner in which persons accused of crimes are to be arraigned.  In particular, § 46-12-210, MCA, mandates the advice that is to be given to the defendant before a plea of guilty or nolo contendere is accepted.  Reading these statutes, two things are crystal clear.

¶23     First, not even the judge--much less the clerk or some other staff person--is empowered to evaluate the strength or weakness of the accused's case.  That is not the role of the court--using "court" in the larger sense to include the judge, the clerk and the staff.  Rather, that is the role of defense counsel should one be retained by or appointed for the defendant or, alternatively, it is for the accused should he or she choose to proceed *pro se*.

7

¶24 Second, the procedures and the advice prescribed by the referenced statutes are to be performed by the court--meaning the trial judge. Section 46-1-202(8), MCA. The clerk of court and staff have no part in these. These duties are uniquely the responsibility of the duly elected or appointed magistrate to discharge. It is not only improper, but a violation of the statutes themselves for judges to foist any of these duties onto the clerk or staff, and it is equally unlawful for the clerk or staff to take upon themselves the performance of these statutory obligations.

¶25 Finally, the clerk of court's duties are prescribed by various statutes and rules in the Montana Code. *See,* for example, §§ 1-6-101, 3-6-302, 7-1-4150, 25-30-103, and 25-31-914, MCA; the U.M.C.R.App.; the M.U.R.J.C.C.; and the M.J.C.C.R.Civ.P. In none of these is the clerk of court empowered to give legal advice to an accused or other litigant or to evaluate that person's case for legal strength or weakness. Indeed, this sort of unauthorized practice of law is forbidden. *See* Title 37, Chapter 61, Part 2, MCA.

¶26 With this authority in mind, our reference to the statements allegedly made by the clerk to Duffy as "merely an opinion" grossly understates the problem. If stated, it was an opinion that the clerk should have kept to herself. This sort of practice and procedure violates the law. It is not simply innocuous comment.


/S/ JAMES C. NELSON


8