ORIGINAL

FILED

07/06/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 20-0009

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2021 MT 167N

STATE OF MONTANA,

Plaintiff and Appellee,

v.

ROBERT GEORGE HORNBACK,

Defendant and Appellant.

FILED

JUL 0 6 2021

Bowen Greenwood
Clerk of Supreme Court
State of Montana

APPEAL FROM:  District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DC 87-72
Honorable John W. Larson, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Chad Wright, Appellate Defender, Koan Mercer, Assistant Appellate
Defender, Missoula, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

Marcia Boris, Lincoln County Attorney, Libby, Montana

Submitted on Briefs: May 19, 2021

Decided: July 6, 2021

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2 Defendant and Appellant Robert George Hornback (Hornback) appeals the written Judgment and Sentence issued by the Nineteenth Judicial District Court, Lincoln County, on December 10, 2019, which sentenced him to a term of 100 years at the Montana State Prison (MSP) as a persistent felony offender (PFO), with a 35-year parole restriction, for the offense of deliberate homicide. We affirm.

¶3 On September 17, 1987, the State charged Hornback with Aggravated Kidnapping, Deviate Sexual Conduct Without Consent, and Deliberate Homicide for the August 31, 1987 kidnapping, sexual assault, and murder of 8-year-old Ryan VanLuchene in Libby. On March 3, 1988, Hornback signed an Acknowledgement of Waiver of Rights by Plea of Guilty, in which he agreed to enter an *Alford* plea[1] to an amended charge of Deliberate Homicide, in violation of § 45-5-102(1)(b), MCA (1985), and PFO. In exchange for his plea, the State agreed to dismiss the Aggravated Kidnapping and Deviate Sexual Conduct Without Consent charges with prejudice. The parties agreed to a sentence where Hornback

---

[1] *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970).

2

would be sentenced to 100 years at MSP, with a 17 1/2-year parole restriction, for Deliberate Homicide, and an additional 100 years at MSP, with a 17 1/2-year parole restriction, as a PFO. The sentences were to run consecutively, for an effective sentence of 200 years at MSP with a 35-year parole restriction. The plea agreement contained three attachments: Attachment 1 memorialized the parties' agreements regarding the *Alford* plea, length of sentence, dismissal of charges, and sentencing procedure; Attachment 2 listed—in 29 separate paragraphs, each initialed by Hornback—the evidence the State would have introduced at trial; and Attachment 3 contained a statement acknowledging Hornback was satisfied with the services of his attorney. The plea agreement and the three attachments were all signed by Hornback.

¶4 On March 7, 1988, the plea agreement was filed, along with an Amended Information which charged Hornback with a single count of Deliberate Homicide for causing the death of Ryan VanLuchene while committing, or attempting to commit, the offense of deviate sexual conduct. The District Court held a change of plea and sentencing hearing on the same day. At the hearing, the court conducted a lengthy colloquy with Hornback regarding the plea agreement and its attachments. Hornback indicated he discussed the documents with his attorney, was satisfied with the services of his attorney, examined the State's evidence, understood he would probably be found guilty by a jury at trial, and felt the plea bargain was advantageous to him. The District Court accepted Hornback's plea and adjudged him guilty of deliberate homicide and of being a PFO. The plea agreement waived a presentence investigation, so the District Court proceeded

3

immediately to sentencing. In accordance with the plea agreement, Hornback was sentenced to 100 years at MSP, with a 17 1/2-year parole restriction, for Deliberate Homicide, and an additional 100 years at MSP, with a 17 1/2-year parole restriction, as a PFO. The District Court stated Hornback was "not to be released on parole under any condition in less than 35 years."

¶5 Hornback did not directly appeal his conviction or sentence, but did file "a number of petitions which have the effect of assailing his convictions" in this Court in 1988. Hornback's petitions did not "directly ask for withdrawal of the guilty plea," but did imply he felt he was coerced by his attorney into the *Alford* plea. We denied his petitions, noting that "nothing in the record indicates even slightly that the *Alford* plea was not intelligently accepted by [Hornback] and agreed to in open court." *State v. Hornback*, No. 88-615, Order (Mont. Feb. 1, 1989). He filed a petition for postconviction relief in this Court in 1990, alleging ineffective assistance of counsel; that counsel coerced him into the *Alford* plea; misconduct and coercion by the police and sheriff's departments; and that both blood and hair evidence in the case had been "negated" by the state crime lab. Hornback also filed several motions which repeatedly claimed the hair evidence in his case had been "negated" and sought police files on children who had been murdered in Olney, Illinois, and Spokane, Washington, as well as files on unsolved child murders in several other states. We denied Hornback's motions and ultimately denied and dismissed Hornback's petition, noting it "raise[d] issues previously ruled on by this Court and against the petitioner[.]" *In re Hornback*, No. 90-513, Order (Mont. Dec. 18, 1990). Hornback filed a petition for a

4

writ of habeas corpus in federal court in 1991, alleging his plea was not voluntarily made. The federal district court permitted discovery, including a deposition of Hornback, and held an evidentiary hearing on Hornback's claims on March 10, 2004. The federal district court denied Hornback's petition, and its denial was thereafter affirmed in an unpublished memorandum opinion by the Ninth Circuit Court of Appeals. *Hornback v. McCormick*, 133 F. App'x 378 (9th Cir. 2005). The Ninth Circuit found Hornback's "claim that his plea was involuntary" was "contradicted by the record" and that "Hornback's *Alford* plea was entered knowingly, intelligently, and voluntarily[.]" *Hornback*, 133 F. App'x at 381.

¶6     On January 2, 2018, Hornback filed a Petition for Writ of Habeas Corpus or Other Appropriate Writ in the District Court. In his petition, Hornback alleged he was serving a facially invalid and illegal sentence because he received separate sentences for deliberate homicide and PFO and requested a resentencing hearing. The State conceded that "imposition of a separate sentence" for Hornback's designation as a PFO was illegal, but argued a resentencing hearing was not necessary as the District Court could simply strike the additional 100-year PFO sentence from Hornback's existing sentence. After the District Court appointed Hornback counsel, Hornback filed an amended sur-reply in support of his petition where he argued he should be allowed to withdraw his *Alford* plea and enter a plea of not guilty. In the alternative, Hornback requested an evidentiary hearing to present further evidence in support of withdrawing his plea. Hornback separately filed

5

a Motion to Withdraw Plea.[2] The State filed responses to both the amended sur-reply and the motion to withdraw plea. On September 23, 2019, the District Court issued its Order Regarding Petitioner's Petition for Writ of Habeas Corpus and Denying Petitioner's Motion to Withdraw Guilty Plea; Order Setting Sentencing Hearing and Order for Transport, which found there was not good cause to allow Hornback to withdraw his plea and set a sentencing hearing for December 3, 2019. At the sentencing hearing, the District Court orally resentenced Hornback to 100 years at MSP for the offense of Deliberate Homicide, with a 35-year parole restriction. The court awarded Hornback credit for the time he had already served on the original sentence. The District Court's written Judgment and Sentence followed on December 10, 2019.

¶7 Hornback appeals, raising two issues which we restate as follows: (1) whether Hornback's sentence is illegal, and (2) whether the District Court abused its discretion by denying an evidentiary hearing on Hornback's motion to withdraw his guilty plea.

¶8 We review criminal sentences for legality. *State v. Yang*, 2019 MT 266, ¶ 8, 397 Mont. 486, 452 P.3d 897 (citing *State v. Coleman*, 2018 MT 290, ¶ 4, 393 Mont. 375, 431

---

[2] This motion was filed in Hornback's habeas case, rather than in his original criminal case. The State objected, and correctly noted the motion to withdraw plea should have been filed in Hornback's original criminal case. After noting its objection, and recognizing "the State as represented by the Lincoln County Attorney is the proper party" to address Hornback's motion, the State responded to the merits of Hornback's motion. The District Court issued its order denying Hornback's motion to withdraw in the habeas file. On appeal, the State again notes it "will not challenge the efficacy of Hornback filing his motion to withdraw his plea in the habeas case rather than in the criminal case[.]" We therefore address the merits of the District Court's denial of Hornback's motion to withdraw plea here because it is, in substance, part of his appeal of the criminal judgment in this case.

P.3d 26). "A sentence that falls within the statutory parameters constitutes a legal sentence." *State v. Clark*, 2008 MT 112, ¶ 8, 342 Mont. 461, 182 P.3d 62 (citing *State v. Mingus*, 2004 MT 24, ¶ 10, 319 Mont. 349, 84 P.3d 658).

¶9     Hornback argues his felony murder sentence for deliberate homicide with the predicate felony offense of deviate sexual conduct is facially invalid and therefore illegal. He did not make this argument at the District Court and raises it for the first time in this appeal. Relying on *State v. Hansen*, 2017 MT 280, 389 Mont. 299, 405 P.3d 625, Hornback asks this Court to vacate his sentence and remand to the District Court for either further plea proceedings or a new trial. In *Hansen*, we determined a district court imposed an illegal sentence when it accepted a no contest plea to a sexual offense. *Hansen*, ¶ 12 ; *see also Hardin v. State*, 2006 MT 272, ¶ 15, 334 Mont. 204, 146 P.3d 746 (holding Hardin's claim the district court lacked jurisdiction to accept a no contest plea to a sexual offense and impose the sentence he received was more accurately characterized as a claim that his sentence was illegal as exceeding statutory authority). We therefore voided the plea agreement and vacated the sentence imposed and remanded to the district court to allow Hansen to "enter a legal plea to the original charges, enter a new plea agreement, or to proceed to trial." *Hansen*, ¶ 13. *Hansen* and *Hardin* have since been overruled, however, to the extent that they "fail[ed] to distinguish between an illegal sentence and an invalid plea[.]" *Gardipee v. Salmonsen*, 2021 MT 115, ¶ 10, 404 Mont. 144, 486 P.3d 689.

¶10    Hornback asserts his plea to felony murder was invalid due to how the State charged him in this case. While the original Information charged Hornback with Deviate Sexual

7

Conduct Without Consent, in addition to Deliberate Homicide and Aggravated Kidnapping, the Amended Information charged Hornback with Deliberate Homicide while committing the offense of Deviate Sexual Conduct. Section 45-5-102(1)(b), MCA (1985), provided that a deliberate homicide constituted felony murder when it was "committed while the offender is engaged in or is an accomplice in the commission of, an attempt to commit, or flight after committing or attempting to commit robbery, sexual intercourse without consent, arson, burglary, kidnapping, felonious escape, or any other felony which involves the use or threat of physical force or violence against any individual." The Deviate Sexual Conduct statute provided that "[a] person who knowingly engages in deviate sexual relations or who causes another to engage in deviate sexual relations commits the offense of deviate sexual conduct." Section 45-5-505(1), MCA (1985). The statute provided for an enhanced sentence if the deviate sexual conduct was committed "without consent." Section 45-5-505(3), MCA (1985). "Without consent" meant "(1) the victim is compelled to submit by force or by threat of imminent death, bodily injury, or kidnapping to be inflicted on anyone; or (2) the victim is incapable of consent because he is: (a) mentally defective or incapacitated; (b) physically helpless; or (c) less than 16 years old." Section 45-5-501, MCA (1985).

¶11 In the Amended Information, the State did not charge Hornback with felony murder with the predicate felony of deviate sexual conduct *without consent*, it charged him with felony murder with the predicate felony of deviate sexual conduct. While under the individual facts of this case there can be no argument that the eight-year-old victim

8

consented to sexual contact with Hornback, Hornback argues the plain language of the statutes show the offense of deviate sexual conduct is not a predicate offense to felony murder when it is not charged as deviate sexual conduct without consent. He is correct on this point. "In the construction of a statute, we look first to its plain language; if the language is clear and unambiguous on its face, we need not engage in any further construction." *State v. Felde*, 2021 MT 1, ¶ 16, 402 Mont. 391, 478 P.3d 825. Because the plain language of the deviate sexual conduct statute did not require "the use or threat of physical force or violence" and deviate sexual conduct was not an enumerated predicate felony under § 45-5-102(1)(b), MCA (1985), Hornback's plea to felony murder was defective.

¶12 Hornback, reaping the benefits of a plea agreement which saw the State forego seeking the death penalty and dismissing both felony deviate sexual conduct and aggravated kidnapping charges, did not object to the validity of his conviction at the District Court. "It is well established that a plea of guilty which is voluntarily and understandingly made constitutes a waiver of nonjurisdictional defects and defenses, including claims of constitutional violations which occurred prior to the plea." *Gardipee*, ¶ 3 (citing *Hagan v. State*, 265 Mont. 31, 35, 873 P.2d 1385, 1387 (1994)). Hornback also had the opportunity to, but did not, appeal his conviction in 1988. By not objecting, Hornback has waived the claim challenging the validity of his conviction. *See Gardipee*, ¶¶ 9, 11. Hornback's 100-year sentence is within the legal range for deliberate homicide and is, therefore, a legal sentence. Because Hornback's sentence is within the legal range

9

for deliberate homicide and he has waived any claims challenging the validity of his conviction, we affirm the District Court's sentence in this case.

¶13 "When a criminal defendant appeals the denial of his motion to withdraw a guilty plea, we review the trial court's findings of fact to determine whether they are clearly erroneous and its conclusions of law to determine if they are correct." *State v. Newbary*, 2020 MT 148, ¶ 5, 400 Mont. 210, 464 P.3d 999 (citing *State v. Warclub*, 2005 MT 149, ¶ 24, 327 Mont. 352, 114 P.3d 254). Whether a plea is voluntary is a mixed question of law and fact, which we review de novo. *Newbary*, ¶ 5 (citing *Warclub*, ¶ 24). "Except where mandated by Title 46, the court has discretion to conduct a hearing on the merits of a motion." Section 46-13-104(2), MCA. We review a district court's denial of an evidentiary hearing for a clear abuse of discretion. *State v. Terronez*, 2017 MT 296, ¶ 19, 389 Mont. 421, 406 P.3d 947 (citing *State v. Schulke*, 2005 MT 77, ¶ 10, 326 Mont. 390, 109 P.3d 744). "A court abuses its discretion if it acts arbitrarily without the employment of conscientious judgment or exceeds the bounds of reason, resulting in substantial injustice." *Terronez*, ¶ 19.

¶14 As we have determined Hornback is not serving an illegal sentence, we turn now to the District Court's denial of his motion to withdraw plea, along with its decision to not hold an evidentiary hearing on the motion. Hornback asserts an evidentiary hearing was required because he now asserts new reasons for withdrawing his plea than he has in his numerous previous attempts. The State argues Hornback was not entitled to an evidentiary

hearing on these claims and the District Court's denial of a hearing was not an abuse of discretion. We agree with the State.

¶15 "At any time before or after judgment the court may, for good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted." Section 46-16-105(2), MCA (1987). "Good cause 'includes the involuntariness of the plea, but it may include other criteria.'" *Terronez*, ¶ 27 (quoting *Warclub*, ¶ 16). "The fundamental purpose of allowing the withdrawal of a guilty plea is to prevent the possibility of convicting an innocent [person]." *State v. Liefert*, 2002 MT 48, ¶ 10, 309 Mont. 19, 43 P.3d 329 (quoting *State v. Johnson*, 274 Mont. 124, 127, 907 P.2d 150, 152 (1995)).

¶16 Hornback asserts he has "good cause" to withdraw his plea because of misrepresentations, misconduct, and coercion by State actors prior to entering his plea. Specifically, Hornback asserts he was coerced into pleading guilty due to an employee at the state crime lab "matching" his hair to hairs found on the victim in this case. But for this evidence, he claims he would not have pled guilty via *Alford* and would have insisted on going to trial. The District Court, without holding an evidentiary hearing, found Hornback did not present good cause to allow him to withdraw his plea in this case. The District Court relied, in part, on a transcript of an evidentiary hearing held by the federal district court on Hornback's federal habeas corpus petition which dealt with Hornback's claim regarding the hair evidence to show that his claims in this case were not new and he had full opportunity to present them in the federal proceeding. At that hearing, Hornback's original trial counsel testified he hired an expert and was able to neutralize the State's hair

11

evidence prior to the plea. Beyond this evidentiary hearing relied on by the District Court, Hornback also made claims the State's hair evidence had been "negated" in his 1990 petition for postconviction relief. Hornback's claims regarding the State's hair evidence are not new, have been repeatedly rejected by both this Court and federal courts for over 30 years, and do not constitute "good cause" for allowing him to withdraw his plea.

¶17 Hornback's other claims, involving a "crazy" transient allegedly observed and reported to law enforcement by a local man named Arnold Griner and a physical assault on Hornback by "Detective Bernall and William Douglass . . . telling him to accept the plea" also did not require the District Court to hold a hearing. "A hearing on a request to withdraw a plea is not expressly mandated as a matter of law." *Terronez*, ¶ 25 (citing § 46-16-105(2), MCA). Hornback—who has been telling the story of how he was present for Ryan's rape and murder, but it was actually committed by the supposed "crazy" transient for over 30 years now—had full opportunity to present witness affidavits to support his story. *See Terronez*, ¶ 25. None were presented. While conducting an evidentiary hearing "would ordinarily be necessary and may well have been the prudent course in this case," *Terronez*, ¶ 25, we do not find the District Court clearly abused its discretion by not holding one. In addition, the District Court correctly found Hornback did not present "good cause" to withdraw his *Alford* plea in this case.

¶18 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the

Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶19    Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices