DA 07-0435

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2008 MT 186

RICHARD LEE,

        Plaintiff and Appellant,

   v.

CITY OF MISSOULA POLICE DEPARTMENT,

        Respondent and Appellee.

| | |
|---|---|
| APPEAL FROM: | District Court of the Fourth Judicial District, In and For the County of Missoula, Cause No. SB-20007-004 Honorable Robert L. Deschamps, III, Presiding Judge |

COUNSEL OF RECORD:

        For Appellant:

            Richard A. Reep, Reep & Bell, P.C., Missoula, Montana

        For Appellee:

            Jim Nugent, City Attorney, Missoula, Montana

Submitted on Briefs:  March 12, 2008

Decided:  May 29, 2008

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1 Richard Lee (Lee) appeals the denial of his motion for release of confidential criminal justice information filed in the District Court of the Fourth Judicial District, Missoula County. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 On November 14, 2006, Lee was offered a job with the Missoula Police Department (MPD) contingent in part upon completion of a background investigation. After conducting the background investigation, MPD denied Lee the position. In a letter dated December 21, 2006, the MPD stated to Lee it was rescinding its job offer "based on confidential information discovered during your background investigation." Lee requested information about the results of MPD's background investigation. MPD refused to provide any further information, stating that the legal basis for its denial of his request was adequately explained in the "Authorization to Release Information" (Release) which Lee signed on May 11, 2006. The Release reads in pertinent part as follows:

> As an applicant for the position of Police Officer with the City of Missoula Police Department, I am required to undergo a background investigation for use in determining my qualifications and suitability to be a police officer. **I realize that the Missoula Police Department will NOT release the information provided to them to any person, including myself.** The information submitted to the Missoula Police Department is confidential and will be used only for the purpose of determining my suitability for law enforcement employment.

(Emphasis added.)

¶3 On February 27, 2007, Lee filed a motion for release of confidential criminal justice information in the District Court. In this motion, Lee sought an order from the District Court requiring the release of the results of the MPD's background investigation. A hearing on the motion was held before the District Court on April 10, 2007. The MPD requested the District Court conduct an in camera review of the information contained in the background investigation. The MPD stated it wanted to prevent release of the information out of concern for the privacy rights and safety some of the individuals who had provided confidential information to the MPD about Lee. Lee's attorney did not object to an in camera review by the District Court but insisted that Lee had a right to examine the results of the MPD's background investigation.

¶4 The District Court conducted an in camera review of the material and received briefing on the motion by the MPD and Lee. On May 30, 2007, the District Court denied Lee's motion. The District Court concluded Lee could not gain access to the information compiled by the MPD under the right-to-know provision in Article II, Section 9 of the Montana Constitution. This provision reads as follows:

> No person shall be deprived of the right to examine documents or to observe the deliberations of all public bodies or agencies of state government and its subdivisions, except in cases in which the demand of individual privacy clearly exceeds the merits of public disclosure.

Mont. Const. art. II, § 9.

The District Court determined the individual privacy demands of the informants who provided confidential information to the MPD about Lee clearly exceeded the merits of

disclosing this information to Lee. Additionally, the District Court concluded that Lee had validly waived his right-to-know by signing the Release.

¶5     Lee now timely appeals the denial of his motion. Lee maintains that his constitutional right to employment in Montana under Article II, Section 3, and his right-to-know under Article II, Section 9, give him a constitutional right to examine the results of the background investigation. Furthermore, Lee maintains that his alleged waiver of his right-to-know by signing the Release is invalid, unconstitutional, and should be rejected. The MPD urges us to affirm the District Court. The MPD argues that the individual privacy demands of the informants who provided information to the MPD in this case clearly outweigh Lee's rights under Article II, Section 9. Moreover, the MPD argues that Lee validly waived his right-to-know by signing the Release.

¶6     The District Court correctly noted that the existence of a constitutionally protected individual privacy demand is dependent upon: (1) whether the person involved had a subjective or actual expectation of privacy; and (2) whether society is willing to recognize that expectation as reasonable. *Associated Press, Inc. v. Mont. Dept. of Revenue*, 2000 MT 160, ¶ 35, 300 Mont. 233, ¶ 35, 4 P.3d 5, ¶ 35. The District Court in this case found that: (1) the MPD had told the informants their information would remain confidential, thus giving rise to an actual expectation of privacy; and (2) that society is willing to recognize this expectation as reasonable based in part on the public policy of ensuring that the MPD would be able to adequately conduct pre-employment screening of its officers by receiving candid information from confidential informants.

4

¶7 Lee asserts the District Court erred in this conclusion. However, even assuming for the sake of argument that Lee did have a constitutional right to examine the results of the background check under Article II, Section 9, we nonetheless conclude that Lee validly waived this constitutional right. Because we affirm the District Court's conclusion on that ground alone, we express no view on the correctness of its analysis that society would recognize the informants' privacy expectations in this case as "reasonable," thus trumping Lee's rights under Article II, Section 9.[1]

¶8 Thus, we state the sole issue on appeal as follows: *Did Lee validly waive his constitutional right under Article II, Section 9 to examine the results of the MPD's background investigation?*

## STANDARD OF REVIEW

¶9 We agree with the MPD that the denial of Lee's motion is analogous to a ruling on a motion to dismiss under M. R. Civ. 12(b)(6). Thus, we will review the denial of Lee's motion de novo. *Guest v. McLaverty*, 2006 MT 150, ¶ 2, 332 Mont. 421, ¶ 2, 138 P.3d 812, ¶ 2. The district court's conclusions of law we will review for correctness. *Guest*, ¶ 2.

## DISCUSSION

---

[1] In this connection, we note that while confidentiality may ensure an informant is candid, it provides no guarantee that the information he or she provides is reliable or accurate. This is one of the reasons why, in the criminal law context, we allow the use of information provided by confidential informants only if there are guarantees that the confidential informant is reliable. *State v. Reesman*, 2000 MT 243, ¶¶ 22-47, 301 Mont. 408, ¶¶ 22-47, 10 P.3d 83, ¶¶ 22-47, *overruled on other grounds by State v. Barnaby*, 2006 MT 203, 333 Mont. 220, 142 P.3d 809.

¶10 The right-to-know is found within Article II of the Montana Constitution and is therefore a fundamental right. *State v. Tapson*, 2001 MT 292, ¶ 15, 307 Mont. 428, ¶ 15, 41 P.3d 305, ¶ 15. As such, this right may be waived only by a voluntary, intelligent, and knowing waiver. *State v. Mann*, 2006 MT 33, ¶ 14, 331 Mont. 137, ¶ 14, 130 P.3d 164, ¶ 14. We have explained the practical meaning of this standard as follows:

> For a waiver to be effective, a defendant must waive a known right "knowingly, intelligently and voluntarily." *Duffy v. State*, 2005 MT 228, ¶ 13, 328 Mont. 369, ¶ 13, 120 P.3d 398, ¶ 13. These words have common and accepted meanings. "Knowingly" simply means having "knowledge, information and understanding" of relevant facts before acting or making a decision. American Heritage Dictionary 971 (4th ed. 2000). In *State v. McCarthy*, 2004 MT 312, ¶ 32, 324 Mont. 1, ¶ 32, 101 P.3d 288, ¶ 32, we explained that "there can be no waiver by one who does not know his rights or what he is waiving." "Intelligently" means "applying one's knowledge" in order to make a decision or commence an action; in other words, having an understanding of the relevant facts of a situation. American Heritage Dictionary 910 (4th ed. 2000). And "voluntarily" means acting under one's own will, without constraint or expectation of reward. American Heritage Dictionary 1929 (4th ed. 2000). In *State v. Wetzel*, 2005 MT 154, ¶¶ 16-17, 327 Mont. 413, ¶¶ 16-17, 114 P.3d 269, ¶¶ 16-17, we explained that a "voluntary" consent to search means a consent given without threats, duress or coercion.

*Mann*, ¶ 14.

¶11 Lee challenges the constitutional validity of the waiver in this case. First, he points out that the District Court failed to hold a hearing in order to determine whether he voluntarily, knowingly, and intelligently waived his right-to-know. Second, he argues that the waiver found in the Release should be declared void and unconstitutional on its face, because it contains "none of the safeguards necessary to ensure that a waiver of a constitutional right has been done knowingly and intelligently. There is no reference to the waiving party's right to know." In support of his position, he cites to Justice Nelson's

6

special concurrence in *Kloss v. Edward D. Jones & Co.*, 2002 MT 129, 310 Mont. 123, 54 P.3d 1, wherein he stated that "[f]or a fundamental right to be effectively waived, the individual must be informed of the consequences before personally consenting to the waiver. And, the waiver will be narrowly construed." *Kloss*, ¶ 64 (Nelson, J., specially concurring) (citations omitted).

¶12 We not previously addressed whether specific language is constitutionally required to inform a person who is waiving his or her rights under Article II, Section 9, of those rights and the consequences which would follow from such a waiver. As the District Court observed, an instructive analogy may be drawn between the case at bar and United States Supreme Court precedent discussing the principles used to evaluate the adequacy of *Miranda* warnings. Under *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602 (1966), a suspect held for custodial interrogation must warned that he "has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Miranda*, 384 at 479, 86 S. Ct. at 1630. Since *Miranda* was decided, the United States Supreme Court has ruled that no "talismanic incantation," or particular iteration of these warnings, is required to fully inform a suspect of his Fifth Amendment right against self-incrimination. *Duckworth v. Eagen*, 492 U.S. 195, 203, 109 S. Ct. 2875, 2880 (1989). As stated by the United States Supreme Court,

> We have never insisted that *Miranda* warnings be given in the exact form described in that decision. In *Miranda* itself, the Court said that "[t]he warnings required and the waiver necessary in accordance with our

7

opinion today are, *in the absence of a fully effective equivalent*, prerequisites to the admissibility of any statement made by a defendant." 384 U.S., at 476 (emphasis added). See also *Rhode Island v. Innis*, 446 U.S. 291, 297 (1980) (referring to "the now familiar *Miranda* warnings . . . or their equivalent"). In *California v. Prysock*, 453 U.S. 355 (1981) (*per curiam*), we stated that "the 'rigidity' of *Miranda* [does not] exten[d] to the precise formulation of the warnings given a criminal defendant," and that "no talismanic incantation [is] required to satisfy its strictures." *Id.*, at 359.

*Duckworth*, 492 U.S. at 202-03, 109 S. Ct. at 2880 (alterations in original, footnote omitted).

¶13  We agree with the District Court's decision to analogize between the analysis in *Duckworth*, and the constitutional requirements of the waiver of the right-to-know. When evaluating a waiver of the right-to-know, courts should inquire simply whether language in the waiver fully and effectively apprised a person in practical terms that he is giving up any right or ability to examine certain information held by a public body or governmental agency. As long as the totality of the circumstances shows the waiver was voluntary, knowing, and intelligent, a waiver does not need to utilize any particular language in order to be valid.

¶14  Although the District Court did not hold an evidentiary hearing on whether Lee's waiver was voluntary, knowing and intelligent, it did receive briefs from both parties on this issue and did issue findings in its order. According to that order, the only element of the waiver inquiry which Lee challenged was that he did not have full knowledge of his constitutional right-to-know or his right to refuse to waive this right before he signed the Release. Here, the Release stated that "I realize that the Missoula Police Department will NOT release the information provided to them to any person, including myself." This

clearly and unequivocally informed Lee that as a consequence of his decision to sign the Release, he would not be allowed access to the results of the background investigation conducted by the MPD. Moreover, it is significant for purposes of our analysis that Lee was under no compulsion to sign the Release; he did so voluntarily in order to be considered for possible employment. Had elements of coercion or duress existed in this case, our resolution of the waiver issue might well have been different.

¶15 Unlike other constitutional rights such as the right against self-incrimination (Mont. Const. art. II, § 25), or the right to counsel (Mont. Cons. Art. II, § 24), the constitutional guarantee of the right-to-know has a very practical, common sense meaning; it gives citizens "the right to examine documents or to observe the deliberations of all public bodies or agencies of state government . . . ." Mont. Const. art. II, § 9. Had the Release not informed Lee he was giving up the ability or right to examine information gathered by the MPD, was otherwise unclear, or swept too broadly, we might reach a different result. But in this case, whether or not Lee personally knew he had a right-to-know under Article II, Section 9, the waiver informed him, in practical terms, that he was waiving any such right by agreeing to the terms of the Release. In situations where an agency must conduct confidential background checks of job applicants, it might be good practice for those agencies to inform an applicant of his or her right-to-know under Article II, Section 9; however, we decline, based on the facts of the instant case, to require any particular "talismanic incantation" or specific iteration of that right as a precondition to a valid waiver.

**CONCLUSION**

9

¶16    Because the District Court correctly concluded that Lee voluntarily, knowingly, and intelligently waived his constitutional right to examine the results of the MPD's background investigation, we affirm.

/S/ PATRICIA COTTER

We concur:

/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JOHN WARNER
/S/ JIM RICE